In re RHEINWALD.

(Supreme Court, Appellate Division, Third Department. May 14, 1915.)

1. MASTER AND SERVANT ⟐87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—"EMPLOYÉ"—"EMPLOYER."

Workmen's Compensation Law (Consol. Laws, c. 67; Laws 1913, c. 816, as re-enacted and amended by Laws 1914, c. 41, and Laws 1914, c. 316) § 2, provides that the compensation provided for "shall be payable for injuries sustained or death incurred by employés engaged in the following hazardous employments: * * * Group 42. * * * Painting. * * *" Section 3, subds. 3–5, 7, 8, define "employer" as a person employing workmen in hazardous employments, "employé" as a person engaged in a hazardous employment in the service of an employer carrying on or conducting the same, upon the premises, at the plant, or in the course of his employment away from the plant, "employment" as employment only in a trade, business, or occupation carried on by an employer for pecuniary gain, "injury" as an injury in the course of employment, and "death" as death arising from such injury. Section 10 makes an employer liable for the death of an employé in the course of his employment, without regard to fault. Section 11 makes such liability exclusive, except that, if the employer fails to secure payment as provided by section 50, relating to insurance, the employé has the option of compensation under the act or a suit at law against the employer. Decedent, a painter by trade, who had occasionally done work for the employer, who was paid

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a lump sum for a job of painting on the employer's plant, to be done under a contract in writing containing undertakings as to the quality and materials, and who himself furnished the tools and materials and did the work without helpers, was killed by a fall from a scaffold. *Held*, that he was an "employé," so that his widow was entitled to compensation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Employer.]

2. MASTER AND SERVANT ⬅️250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—APPEAL—FINDINGS.

Under Workmen's Compensation Law, § 20, making a decision of the State Workmen's Compensation Commission final as to all questions of fact, and section 23, providing that an award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction as between the parties, unless, within 30 days after a copy of such award or decision has been sent to the parties, an appeal be taken to the Appellate Division, and that the Commission may in its discretion certify questions of law involved in the decision, to be heard in a summary manner, the evidence taken before the Commission and certified with its findings of fact is before the court, to supplement and explain, but not to contradict, the Commission's findings of fact, and in all cases the correctness of its determination as to the applicability of the statute to a claim remains a question for judicial determination on the facts as found.

3. MASTER AND SERVANT ⬅️250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—PRESUMPTIONS—EMPLOYÉ.

The Workmen's Compensation Law, providing that in any proceeding to enforce a claim for compensation thereunder "it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of" the act, is binding on the Appellate Division on the determination of questions certified by the State Workmen's Compensation Commission, and is sufficient, without substantial evidence to the contrary, to show that a workman, whose survivor asks compensation for occupational accident under the statute, was an "employé," entitled to call into activity the machinery of the act for the distribution of the loss occasioned by his injury among all patrons of the industry in which he was employed.

4. MASTER AND SERVANT ⬅️88 — PERSONAL INJURIES — "INDEPENDENT CONTRACTOR"—"EMPLOYÉ."

Decedent, a painter by trade, who did general painting wherever he could get a job, who was out of work some of the time, who had done all the painting for a supply company, who engaged to do some sign painting on its plant for the lump sum of $50, stipulating in writing as to the materials to be used and the quality of the work, who furnished the materials and himself, without helpers, did the work, was an "independent contractor," and not an "employé," within the scope of those terms as used in prior employers' liability statutes, or in common-law decisions applying rules of the master's liability in negligence for injury to a servant; the term "independent contractor" meaning one who renders service free from the employer's control as to the manner in which the work is to be done, the indispensable element to his character as such being that he must have contracted to do a specified work and have the right to control the manner of doing it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. ⬅️88.

For other definitions, see Words and Phrases, First and Second Series, Employé; Independent Contractor.]

5. COURTS ⬅️89—PRECEDENTS—WORKMEN'S COMPENSATION LAW—EMPLOYÉ—DECISIONS AT COMMON LAW.

In determining whether decedent was to be deemed an "independent contractor" or an employé, within the Workmen's Compensation Law, de-

cisions at common law, or under the employers' liability statutes, involving the question as to whom a master owes the duty of care and precaution arising out of the contractual relation of hiring, are not controlling, but only those decisions based on that act, or acts based upon the identical principle, are influential or controlling.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. ☞89.]

Lyon and Howard, JJ., dissenting.

Appeal from Workmen's Compensation Commission.

Proceedings under the Workmen's Compensation Act by Mary Rheinwald to obtain compensation for the death of her husband, Robert Rheinwald, opposed by the Builders' Brick & Supply Company, employer, and the Fidelity & Deposit Company of Baltimore, Md., insurer. Compensation was denied by the State Workmen's Compensation Commission, and the claimant appeals, on questions certified. Reversed and remanded, with directions to proceed to assess compensation.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Miles M. Dawson, Howard W. Ameli, and Richard Blaine Dawson, all of New York City, for appellant.

Walter G. Evans, of New York City, for respondents Fidelity & Deposit Co. and another.

Jeremiah F. Connor, of New York City (Egburt E. Woodbury, Atty. Gen., and E. C. Aiken, Deputy Atty. Gen., of counsel), for Workmen's Compensation Commission.

WOODWARD, J. [1] I am of the opinion that the Workmen's Compensation Law (Consol. Laws, c. 67; Laws 1913, c. 816, as re-enacted and amended by Laws 1914, c. 41, and Laws· 1914, c. 316), fairly construed and beneficially applied, gives right of compensation to the present claimant before the State Workmen's Compensation Commission. The work in which Robert Rheinwald, the claimant's husband, was engaged at the time of his death, the manner in which he was doing it, the circumstances under which he came to be doing it, and the relation which his work bore to the business carried on by the respondent Builders' Brick & Supply Company, combine to bring within the scope of the statute his accidental and mortal injury in the course of that work, and entitle his widow and surviving children to the compensation which the law contemplates shall be paid to them when occupational mishap cuts off the wage-earnings on which they were dependent for support. The Workmen's Compensation Law must in fairness be deemed to have been enacted in furtherance of a legislative determination, enforced by explicit mandate of the people through amendment of the state Constitution, that a new and different scheme and basis of indemnity for industrial accidents should be adopted in this state, in the light of the social experience of other commonwealths and countries. Injuries sustained by those who perform the manual and mechanical tasks of an industry must be deemed to have been intended by this statute to be made a social risk, a liability of the industry, a

charge upon the production cost of the article manufactured or the service rendered.

Hitherto the rule of our statute and fundamental law had been that any right of recovery for industrial accidents must arise from a breach of the master's duty as to care and safeguards, and accordingly was limited by whatever contractual relation existed between the person injured and the person whose breach of duty was the efficient cause of injury. For this historic concept of liability springing from omission of legal duty created by contractual relation there has been substituted an application of the social principle that, regardless of duty and regardless of fault, the expenses and loss of earnings resultant from occupational injury to a workman engaged in carrying on an inherently hazardous business or avocation of an employer should be paid in the first instance by the employer and by him made a charge against the operating costs of the business. In place of the traditional juristic rule that the master must respond in damages when his servant is injured through the master's fault, and that otherwise the servant must go unrecompensed and the loss be borne by him alone, the people and Legislature have now put in force the changed concept that the *trade product* should be charged with all consequences of inherent trade hazards, and that losses to individual workers, through disability while engaged in the service of the proprietor of the business, should be distributed among all its consumers or patrons, rather than left to operate ruinously against the disabled employé or the solitary employer. This mandate of the fundamental will of the people of this state should be remediably applied and beneficially enforced by the State Workmen's Compensation Commission and by the courts, in fair fulfillment of the legislative purpose, and ought not now to be hampered or crippled by continued application of definitions, concepts, and rules of liability which indubitably produced in large part the very conditions of hardship for which the present statute was designed as comprehensive relief.

For these and consequent reasons, I am convinced that the learned majority of the State Workmen's Compensation Commission were in error in ruling that Robert Rheinwald was not, at the time of the injury which caused his death, an "employé" within the meaning of the Workmen's Compensation Law, and a worker entitled to claim its benefits. The facts of the present case are hardly controverted, but its issues are of vital importance to the efficiency of the plan of compensation created by the statute and the extent to which its administration will be able to fulfill the purposes for which it was enacted. At or about noon on July 1, 1914, Robert Rheinwald, the husband of the claimant, was at work on a scaffold on one of the outside walls of a 3½-story brick stable owned by the Builders' Brick & Supply Company, at 172d street and West Farms Road, in the borough of the Bronx, city of New York. For ten years he had been by trade a painter, especially a painter of signs, and on July 1st he was at work repainting a large sign which he had himself painted on this building wall several years before. In some accidental manner, not explained by the record, he slipped from the scaffold or it gave way, and he fell to the ground, received a fractured skull and other mortal injuries, and died a few minutes later.

Several months before his death there had gone into effect in this state the Workmen's Compensation Law (Consol. Laws, c. 67; Laws 1913, c. 816, as re-enacted and amended by Laws 1914, c. 41, and Laws 1914, c. 316), which declares that the "compensation" provided for therein "shall be payable for injuries sustained or death incurred by employés engaged in the following hazardous employments: * * * Group 42. * * * Painting. * * *" The statute further provides that " 'employé' means a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer, and shall not include farm laborers or domestic servants." "Employer" is defined to mean "a person, * * * corporation, * * * employing workmen in hazardous employments"; and "employment" is stated to include "employment only in a trade, business or occupation carried on by the employer for pecuniary gain." Section 3, subds. 3, 4, and 5. The Builders' Brick & Supply Company, as its name indicates, was in the business of manufacturing and selling brick and other building materials, and the sign in question was one of its methods of advertising that business. Consequently it cannot be gainsaid that the painting or repainting of this sign would, if performed by an "employé," be a "hazardous employment," that painting or repainting such a sign would, if performed by an "employé," be employment "in a * * * business * * * carried on by the employer for pecuniary gain," and that the death of an "employé" as the result of accidental injury in the course of such painting or repainting would entitle the widow and surviving children of the deceased to the compensation provided by the statute. Section 3, subds. 7, 8.

The Workmen's Compensation Law further provides that "every employer subject to the provisions of this chapter shall pay or provide, as required by this chapter, compensation according to the schedules of this article for the disability or death of his employé resulting from an accidental personal injury sustained by the employé arising out of and in the course of his employment, without regard to fault as a cause" thereof. Section 10. The following section stipulates that "the liability prescribed by the last section shall be exclusive," except that, in the event an employer fails "to secure the payment of compensation for his injured employés and * * * dependents" by one of the three methods enumerated in section 50 of the act, the employé has the option of compensation under the act or suit at law against an employer shorn of common-law defenses. Section 11. The defendant respondent, the Builders' Brick & Supply Company, had, pursuant to subdivision 2 of section 50, secured the payment of compensation to its injured employés by insuring the same with the Fidelity & Deposit Company of Baltimore, Md., known under the provisions of the act as the "insurance carrier." Section 54. The Builders' Brick & Supply Company having thus "provided compensation" for its injured employés through securing the payment thereof by the insurance carrier, the claimant asserts her right to reimbursement thereunder.

Upon the death of Rheinwald while at work as a painter on the sign of the Builders' Brick & Supply Company, the notices required by statute (section 18) were duly served in behalf of the widow and minor children, proofs of death were duly submitted, claim was made to the compensation provided for by the statute, the claim was duly brought for adjustment before the State Workmen's Compensation Commission, and testimony was taken at length. On August 31, 1914, the Commission handed down its findings of fact and conclusions of law adverse to the claimant's contentions, and rendered the following decision:

"That the deceased was conducting an independent business, that the defendant had no control over the work, and that Rheinwald was an independent contractor and not an employé within the meaning of the Compensation Law."

In this determination Chairman Dowling and Commissioners Darlington and Mosher concurred. Commissioners Wainwright and Mitchell filed a dissenting opinion, which expounded a contrary view upon the central issue in the case.

[2] Section 23 of the act provides that:

"An award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction, as against * * * or between the parties, unless, within thirty days after a copy of such award or decision has been sent to the parties, an appeal be taken to the Appellate Division of the Supreme Court of the Third Department. The Commission may also, in its discretion, where the claim for compensation was not made against the state fund, on the application of either party, certify to such Appellate Division of the Supreme Court questions of law involved in its decision. Such appeals and the questions so certified shall be heard in a summary manner and shall have precedence over all other civil cases in such court."

The claimant appealed from the Commission's adverse determination, and on October 5, 1914, the Commission, on the application of her counsel, passed a resolution certifying to this court "the following question of law involved in the decision of the State Workmen's Compensation Commission denying the claim for compensation in claim No. 602, Robert Rheinwald, deceased":

"In view of the *evidence* in this case, was Rheinwald an *employé* within the meaning of the Workmen's Compensation Law?"

By the form of the question certified, in the above quotation of which the italics are mine, the Commission has asked this court for a ruling upon the basic question of law involved in the Commission's decision. The Commission made certain findings of fact, from which it reached the conclusion of law that Rheinwald was not an "employé" within the meaning of the Workmen's Compensation Law. Section 20 of the statute makes the decision of the Commission "final as to all questions of fact"; but the Commission has certified the evidence taken before it, as well as its own findings of fact therefrom, to aid this court in reaching a determination as to the correctness of the Commission's legal conclusion. The evidence taken before the Commission is therefore before this court to supplement, explain, and illumine, but not to contradict or vary, the Commission's

findings of fact, and in all' cases the question of the correctness of the Commission's determination as to the applicability of the statute to the injury upon which the claim is based remains a question for judicial scrutiny, in the light of the facts as found by the Commission.

Examining the findings, then, in the light of the evidence, do they sustain the decision of a majority of the Commission that Robert Rheinwald was a so-called "independent contractor," and that he accordingly was not an "employé" within the meaning of the statute? He was a painter by trade, and had worked at this trade for many years. He often did sign painting, for the Builders' Brick. & Supply Company and other concerns, but his work was by no means confined to sign painting. He did general painting "wherever he could get a job," and was "out of work," as testified, "some of the time." He had done all the painting work which had been done for the Builders' Brick & Supply Company and its affiliated concern, the P. J. Keany Company, for at least five years before his death. He had, on various occasions, painted for them a sign, a derrick, a fence, an automobile, an automobile truck, and similar work; and he did similar painting for other concerns as desired. Apparently he was usually paid according to a price agreed on in advance of the beginning of work, rather than by the day, although this does not clearly appear as to any piece of work, except the sign painting. The Commission finds that Rheinwald *usually* performed the work personally, did not usually employ others on his job, and that he had not employed other painters in performing previous work for the Builders' Brick & Supply Company, except possibly upon one occasion. As to that wholly unidentified occasion, there was no definite or satisfactory evidence before the Commission, and no evidence whatever that on any other occasion he employed a helper while working for anybody, or that he ever took any job on which he exercised any supervision or superintendence or did anything except personally perform the application of the materials and paint. He was working alone when the scaffold precipitated him to the ground, and was engaged in "doing over" a sign which he had personally painted several years before, but which had not remained in condition satisfactory to the owner of the premises.

The Commission has found as a fact that "the previous work done [by Rheinwald] for the Builders' Brick & Supply Company had usually been done by oral arrangement." The terms of previous employments or contracts do not appear in the record. "A written contract was asked for [by the Builders' Brick & Supply Company] in this instance," the Commission states, "because some work performed previously upon this sign had been unsatisfactory, and because agreement was required that he use certain specified materials and make good for faults in the work," should any defects develop from specified causes within a period of four years. Accordingly, on June 30, 1914, he signed the following contract to do the work in the course of which he was injured two days later:

"I agree to paint new signs on stable and north end of office, same size and wording, and remove old paint and lettering on same, all for the sum of fifty

dollars, and hereby guarantee all work to last in good shape for a period of four years from completion, and agree to replace without charge any defects from chipping or poor material which may develop within that time. I agree to put on not less than two (2) coats of paint, and it is hereby understood and agreed that should I use any materials than Atlantic white lead, linseed oil, pure turpentine, chrome yellow, and lamp black, that I shall not require to be paid for any work or material. Work to be satisfactory to owner when completed."

Materials as well as tools for painting performed by him he usually supplied, as in this instance, and he kept these in the cellar of his home. As an aid in obtaining sign painting to do, he had letter stationery or bill heads printed with his home address and the indorsement, "Robert Rheinwald, Jr., Signs." It does not appear, however, that he ever sent out "bills" or statements for any work done. On at least one occasion he had done work for another sign painter in the neighborhood, but it does not appear that he had ever employed a sign painter, or had the assistance of a sign painter, in any work done by him. The evidence, as well as the findings, fully support the position of the dissenting members of the Commission that Rheinwald "was of the grade of workers, and his work of the kind of work that this law contemplates." Of this there can hardly be doubt or denial. Rheinwald was in fact a workingman, engaged in doing, personally and exclusively, a kind of skilled manual labor which the Workmen's Compensation Law specifically covers, and as to which it clearly contemplates that those engaged therein shall not have to bear personally the inherent risks of their occupation or the burden of loss from accidental injury therein.

[3] The statute furthermore provides that in any proceeding for the enforcement of a claim for compensation thereunder "it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of" the act. That legislative presumption is, of course, as operative and binding in this court as in the Commission below. When a workman or his survivor asks compensation for occupational accident under the statute, the presumption is clear and sufficient, in the absence of substantial evidence to the contrary, that he was an "employé" within the meaning of the statute and is entitled to call into activity its machinery for the economic distribution of the loss occasioned by such injury among all patrons of the industry in which he was employed.

The majority of the Commission have, however, sustained the contention of the insurance carrier and the Builders' Brick & Supply Company that the widow and surviving children of the deceased painter are not entitled to the compensation provided in the Workmen's Compensation Law, on the ground that "the deceased was conducting an independent business, that the defendant had no control over the work, and that Rheinwald was an independent contractor, and not an employé, within the meaning of the Workmen's Compensation Law." No finding of fact, it will be noted, was made by the Commission that the respondent, Builders' Brick & Supply Company, had no control or supervision over the work being done by Rheinwald, and the question whether that conclusion, and the parallel conclusion as to Rheinwald's status as an "independent contractor" were

legally justified, must be determined here in the light of the findings as explained and supplemented by the evidence certified to this court by the Commission.

[4] The action of the majority of the Commission presents essentially two questions for scrutiny here. The first of these concerns the correctness of the contention of the respondents that Rheinwald was not a "workman" or "employé," but rather an "independent contractor," within the meaning and scope of the term "workman" or "employé" as used in "master and servant" statutes or in common-law decisions applying familiar rules of the master's liability in negligence for injuries sustained by an employé. The second and more vital question addresses itself to the respondents' contention that decisions, at common law or under employers' liability statutes, involving the question as to whom the master owes a duty of care and precaution arising out of the contractual relation of hiring, must be regarded as controlling now the determination as to who is an "employé" within the meaning of a statute enacted pursuant to the changed social purpose which I have indicated.

The first of these two questions hardly requires discussion at length, in view of the rule which I conceive should be followed in all interpretation of the Workmen's Compensation Law. The respondents contend, and the majority of the Commission below has in effect held, that Rheinwald was not a "servant," "workman," or "employé" at all, for the reason that, irrespective of the grade of work he was doing or the way in which he was doing it, and irrespective of the relation which he and his work in fact bore to the business of the Builders' Brick & Supply Company, the contractual relation which he had assumed toward that company made him what must be regarded as an "independent contractor," as that term has been defined in negligence actions, at common law and under employers' liability statutes. The respondents contend that this contractual status as an "independent contractor" would, prior to the enactment of the Workmen's Compensation Law, have absolved the Builders' Brick & Supply Company from liability to him for negligent violation of the master's duty of care and precaution as to employés, and that under the new statute the same contractual status bars Rheinwald's widow and children from claiming any benefits from the insurance which the company provided for its employés, pursuant to section 50 of the act. The question whether Rheinwald was to be deemed an "independent contractor," within the meaning of statutes in force prior to the Workmen's Compensation Law, is a question unadjudicated in this state and not capable of so ready resolution as respondents' counsel has contended. Thompson, in his work on Negligence, says (section 622):

"An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation representing the will of the employer, only as to the result of the work, and not as to the means by which it was to be accomplished."

Labatt, in his monumental compendium on Master and Servant, says (section 64):

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will

not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter, in respect to the manner in which the work is to be executed."

Shearman & Redfield, in the course of their volumes on the Law of Negligence, epitomize the familiar rule as follows:

"Although, in a general sense, every person who enters into a contract may be called a 'contractor,' yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect of all its details. The true test of a 'contractor' would seem to be that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. * * * In actual affairs, an independent contractor generally pursues the business of contracting, enters into a contract with his employer to do a specified piece of work for a specified price, makes his own subcontracts, employs, controls, pays, and discharges his own employés, furnishes his own material, and directs and controls the execution of the work. Where these conditions concur, there is, of course, no difficulty in determining his character as such. It is only where one or more of them is lacking that a question arises. *The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work, and have the right to control the mode and manner of doing it.*" S. & R. § 164.

Similar doctrine has been declared and applied, by courts of this state, in Hopkins v. Empire Engineering Corporation, 152 App. Div. 570, 137 N. Y. Supp. 478, Schular v. Hudson River R. Co., 38 Barb. 653, Finkelstein v. Balkin, 103 N. Y. Supp. 99, and People v. Orange County Road Co., 175 N. Y. 84, 67 N. E. 129, 65 L. R. A. 33, though it should be said that none of these decisions involved a state of facts analogous to that at bar. Rheinwald had no employés, made no subcontracts, did the work personally in the first instance, and was engaged personally in "doing it over" when he was mortally injured. The decisive test of contractual status in an independent calling is often stated, under authorities such as those above quoted, to be whether the person doing the work is by the contract placed in the position of freedom from the orders and control of his employer, and a position of representing the employer's will only as to results, and not at all as to means, methods, or manner of doing the work.

Applying this test, is it clear under the findings and evidence at bar that Rheinwald was an "independent contractor," and not an "employé," even under statutes prior to the Workmen's Compensation Law? The Commission concludes that the employing company "had no control over the work"; but, as I have pointed out, it made no finding of fact to that effect. The record itself clearly indicates that it was contemplated by both Rheinwald and his employer that he should and would do all the work personally. He had no assistants on whose labor he made a profit, he personally performed every detail of work for which he was paid, and the record indicates that both understood that full rights of control and direction were reserved to and ordinarily exercised by the employer on painting work performed by Rheinwald.

For example, the record shows the following replies by the employer's president:

"Q. Did you order him to paint your automobile truck or automobile? A. I did. * * * Q. Are you around the brickyard? A. Most of the time. This is the only work he started I did not see. * * * Q. *Did you exercise any supervision whatever, Mr. Heaney, as to the manner* in which this work was being done? A. *On this particular job I did not.* I was not there when he started."

Courts of other states have increasingly taken an enlightened and common-sense view as to what circumstances spell out an independent calling, so as to relieve the employer from statutory or common-law duties of care and precaution (Interstate Coal Co. v. Trivett, 155 Ky. 795, 160 S. W. 731; Employers' Indemnity Co. of Philadelphia v. Kelly Coal Co., 156 Ky. 74, 160 S. W. 914, 49 L. R. A. (N. S.) 850; John E. Waters v. Pioneer Fuel Co., 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564; Chicago; R. I. & Pac. Ry. Co. v. Bennett, 36 Okl. 358, 128 Pac. 705); and I have no doubt that the courts of this state would have similar regard for the actualities of modern industrial organization, in determining whether a manual laborer, doing work wholly of the manual laborers' grade, had by contractual arrangement with his employer absolved the latter, intentionally or unintentionally, from liability for breach of the rules of care and safeguard long made obligatory by law.

[5] The question, however, is not decisive, or hardly material, here. The "independent contractor" was one whose contractual relation with him for whom the work was being performed was such that the former could not fairly be heard to say that he had "assumed the risks" of the occupation, and in consequence could not complain that his employer owed him the full and usual duty of precaution. The "independent contractor" doctrine is thus part and parcel of the "fault" theory of employers' liability. The present question arises under the Workmen's Compensation Law, enacted to supersede the statutes and common-law principles whose terminology we have been discussing, enacted to carry out a legislative purpose that accidents sustained by those who do the work of an industry shall be borne by the industry and paid for by its patrons, and not left to fall harshly upon the disabled worker or his dependent widow and children. Therefore, at the outset, the rule must fairly be laid down that, in determining who is an "employé" within the meaning of the present law, only decisions under this or similar acts based on the identical principle can be recognized as controlling, influential or even interesting. Furthermore, it must be predicated as a fundamental canon of the proper construction of the Workmen's Compensation Law that the statute is to be construed remediably and beneficially, with view of carrying out fairly and fully the legislative purpose, and with view to bringing within the purview and operation of the act all workers whose accidental injuries are inherent occupational risks, rather than with view to excluding from the operation and protection of the act persons whose claim to its benefits falls fairly within the principle that disabilities to workers through trade mishaps should not be left

to hang burdensomely on individuals who might thereby be forced into the class of dependents on public or private charity.

A careful reading of the messages of successive Governors upon the subject, an examination of the exhaustive report prepared by the so-called Wainwright Commission of 1909, which drafted this state's first compensation law, an analysis of the decision of the Court of Appeals (Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. [N. S.] 162, Ann. Cas. 1912B, 156) holding that such a statute could not be put in force in this state without explicit amendment of the Constitution, combine to remove any doubt as to the legislative purpose to supersede "rules of law governing legal liability" which were stated by Governor Hughes to "offend the common sense of fairness," and the purpose likewise to carry out the recommendation of the Wainwright Commission that the state should "establish a new system of compensation for accidents to workmen." Careful perusal of the report of the Wainwright Commission further discloses that perhaps its chief social indictment of the existing system of employers' liability upon proof of his fault was that, as shown by authenticated tables of continental and American experience, 40 to 60 per cent. of accidents in industry were found to occur essentially without relation to legal fault, but were inherent in its normal course, and that, if this loss were left to be borne wholly by persons of the grade of workers, their incomes from the industry have not ordinarily been sufficient to bear such a loss of earnings, with the result that the workers and their dependents became objects of charity, dependents of a society which had forced on them alone the onerous incidence of a burden which fairly belonged to society itself. The economic status of the worker and the income he has been deriving from his toil, therefore, became factors in determining whether the person disabled or killed was "of the grade of workers."

Was Rheinwald an "employé," in fairness and in fact, within the meaning of the Workmen's Compensation Law? Was he of the grade and status of worker, rather than of the grade and status of independent enterpriser? I am of opinion that he was, and that such a holding is essential to effectuate the purpose of the act, in transmitting the burden of this bereavement from the scanty purse of this workingman's widow and children to all the patrons of the product or service furnished by his employer. The fact that he was to be paid a lump sum or "by the job" cannot be recognized as taking him out of the class of "employé." The fact that his contract to do the work was in writing is not decisive on that issue, or the fact that by it he made certain undertakings of satisfaction of the employer or replacement if the finished work did not endure an expected length of time. The fact that his employment by the respondent was casual or intermittent cannot deprive him of the status of employé, in the absence of explicit legislative pronouncement to that effect. The fact that he furnished tools or materials, or undertook to do a specified "job" or produce a given result, does not prevent his being in fact a workman, an "employé," within the purview of this statute.

Common sense and regard for the actualities should be potent on this issue, rather than technical distinctions and elaborate refinements. Rheinwald really was a worker; the sum he received for his painting was in an economic sense wages, and not profits; he had no helpers, on whose work he made a profit; he was not an employer, with employés whom it was his duty to insure under the act; he personally performed all the work; it was contemplated by the employer that he would; and the employer had at least potential control, direction, and supervision of all the work Rheinwald did at his trade for the respondent.

The nature of the work Rheinwald was doing is far more influential on the present issue than any question as to the form of Rheinwald's contract of hiring, because the present law proceeds, not on the theory that an employer owes a legal duty to his employés, but that the industry and its patrons should assume the burdens of injuries sustained by the workers in the industry, as incidents of bringing into being its product or service. The law was intended for the protection of workmen and their families; it was intended to afford machinery by which the burdens of injuries sustained by those who do the actual work of a business, and are not themselves employers with a duty of insurance under the act, may be socially distributed and borne by society in general. The question is: What was the injured man doing, and what was his part in or relation to the actual work? rather than the question whether his contractual relation with the employer was such as to absolve the former from common-law duties of care for the safety of the worker. The question whether an injured worker was an "employé" within the meaning of the Workmen's Compensation Law is to be determined, in the first instance, by the Compensation Commission under all of the facts of the particular case and the rules of construction herein laid down. Whether an injured worker was an "employé," under all of the facts surrounding his participation in the industry, remains a question of law for the consideration of this court, in the light of the facts as found by the Commission. In the case at bar, I am clear that Rheinwald was an "employé" within the meaning of the act.

The carefully considered opinions of the majority of the Industrial Accident Commission of the state of California in its very recent decision as to claim No. 58, Mrs. James v. Western Metal Supply Co. (not yet officially reported), are in accord with the views herein set out. The minority opinion in that tribunal is based upon apprehension of consequences against which the New York statute plainly guards, through the restriction of the term "employment" to "a trade, business or occupation carried on by the employer for pecuniary gain." Section 3, subd. 5. If it is deemed desirable further to withhold compensation from casual or occasional employés, as is done by the Compensation Acts of some states, that is a matter for the Legislature, not for court or Commission. The expediency of such a limitation could not, even if established, be made a canon of construction of the existing statute, or made a factor adverse to fair definition of its fundamental terms.

The question certified is answered in the affirmative, the decision is reversed, and the claim and the proceeding are remanded to the Commission, with instructions to proceed to the computation and allowance of the claimant's recovery under the statute. All concur, except LYON, J., who dissents in opinion in which HOWARD, J., concurs.

LYON, J. I cannot concur in the conclusion reached in the foregoing opinion that Rheinwald was an employé and not an independent contractor. The contract under which the work was done was in writing, and by it Rheinwald agreed to paint signs on stable, office, and shed for $50, and to replace without charge any defects which might appear within four years, and that, should he use any materials other than those specified in the contract, he should not be paid for any work or material; the work to be satisfactory to the owner when completed. Rheinwald had done other job painting for the Supply Company, and on at least one previous occasion had performed the same kind of work for that company, for which he had been paid by the job and which had not proved as lasting as it should have proven; hence the guaranty in the last contract. Rheinwald furnished his own paints and painting tools, which he kept in the cellar of his house; he used printed bill heads on which his name, the word "Signs," and his place of residence were given; he employed his own capital, had the benefit of the profits from his work, did his work on his own time and whenever and in the manner in which he saw fit, was free under his contract to employ assistants in the work, or do it alone as he wished, and in doing it was wholly exempt from any right whatever upon the part of the Supply Company to supervise its execution. In fact, Rheinwald was his own master, and was in no way whatever subject to the direction or control of the Supply Company, which was not engaged in the painting business, but was a dealer in brick.

Respondent's counsel conceded upon the hearing before the Commission that in case Rheinwald had assistants upon the work "that would take him out of the act absolutely; then he would become an independent contractor." While perhaps such concession is not controlling, nothing whatever in the contract directly or impliedly prevented his hiring assistants to work upon the job as before suggested. It also appears, from the following testimony given upon the hearing before the Commission, that this employment was not considered by the appellants as a subject of insurance:

"Q. (by Commission). Is that included in the pay roll submitted to the insurance company? A. It is not. Q. They did not pay that in insuring themselves? A. No."

While perhaps what the appellants may have considered is not material upon the question of the liability of the appellants, it answers the suggestion that the insurance company, having been paid for carrying the risk, ought not now in fairness to question its liability.

While I fully concur in very much of what my learned Associate has so well and ably said in the prevailing opinion as to the beneficent intent of the Compensation Act, and to the effect that it should be liberal-

ly construed to effectuate the purpose for which it was created, I cannot agree with him, in view of the evidence which was given before the Commission, that Rheinwald was an employé within the statute, but am forced to the conclusion that Rheinwald was an independent contractor, and hence that the majority decision of the Compensation Commission to that effect was correct and should be affirmed.

HOWARD, J., concurs.