STRICKER et al. v. INDUSTRIAL COMMISSION OF
UTAH et al.

No. 3477.   Decided March 18, 1920.   (188 Pac. 849.)

1. MASTER AND SERVANT—COMPENSATION ACT DEFINITION ADDS
   NOTHING TO DEFINITION OF "EMPLOYÉ." Comp. Laws 1917, sec-
   tion 3111, defining an "employé," adds nothing to the generally
   accepted definition of "employé," which is one who works for
   and under control of another for hire (citing Words and
   Phrases, Second Series, Employé). (Page 608.)

2. MASTER AND SERVANT—"INDEPENDENT CONTRACTOR" DEFINED. An
   "indepenednt contractor" is one working for another who has
   no control as to the means by which the work is accomplished;
   an independent contractor not being subject to control except
   as to the result of the work (citing Words and Phrases, Second
   Series, Independent Contractor). (Page 608.)

3. MASTER AND SERVANT—QUARRY WORKMAN HELD TO BE INDEPEND-
   ENT CONTRACTOR EXCLUDED FROM COMPENSATION ACT. Where
   persons engaged by the owner of a quarry to quarry rock at a
   stipulated price per ton engaged deceased and another to drill
   the holes, load and shoot the same, deceased and his associate to
   be paid according to the depth of the holes, deceased must be ·
   deemed an independent contractor, and not an employé either
   of the owner or of the contractors engaged to quarry the rock,
   it appearing that deceased and his associate were subjected to
   no supervision, and that the contract with the owner provided
   that it should not assume any responsibility in connection with
   the work, and hence there could be no award under the Work-
   men's Compensation Act either against the independent con-
   tractor or the owner for deceased's death; there being nothing
   to impeach the bona fides of the contracts.[1]   (Page 611.)

Application by Ida Stricker and others under Workmen's
Compensation Act for compensation for the death of Phillip
Stricker against the Amalgamated Sugar Company, em-
ployer.

The Industrial Commission denied the compensation, and

[1] *Callahan* v. *Salt Lake City*, 41 Utah, 300, 125 Pac. 863; *Dayton*
v. *Free et al.*, 46 Utah, 277, 148 Pac. 408.

applicants by original proceedings seek annulment of that decision.

DECISION OF THE INDUSTRIAL COMMISSION AFFIRMED.
*Marioneaux & Beck,* of Salt Lake City, for plaintiff.

*Dan B. Shields,* Atty. Gen., and *J. H. Wolfe, O. C. Dalby,* and *H. Van Dam, Jr.,* Asst. Attys. Gen., for defendant.

WEBER, J.

On October 10, 1917, while working in a limestone quarry owned by the Amalgamated Sugar Company, one of the defendants, Phillip Stricker received fatal injuries by reason of the premature explosion of a drill hole loaded with blasting, powder. His widow and two minor children made application for compensation, which was denied by the Industrial Commission. The applicants now ask this court to review and annul the decision and order of the Industrial Commission refusing compensation and holding that Phillip Stricker was an independent contractor, and not an employé, at the time of his death.

On January 29, 1917, a written agreement was entered into between A. E. Fuhriman and Henry Theurer, two of the defendants herein, and the Amalgamated Sugar Company. The stipulations of that agreement, so far as material here, are:

Fuhriman and Theurer (hereinafter referred to as "contractors") agreed to "properly quarry, break, haul, and deliver and unload at such place or places' upon the sugar company's factory grounds, * * * as the said sugar company or its representatives may designate and direct, all the lime rock which the said sugar company shall desire for its use in its sugar factories at Logan and Lewiston, Utah, during the campaign of 1917," and that said rock should be quarried from such portions of the company's rock quarry as the said company might from time to time direct. "The said rock must be broken into pieces of as near uniform size as possible, consisting of cubes measuring not less than two inches nor more than four inches; and if said first party shall deliver rock of any different size, or rock quarried from any other portions of said

quarry or ledges than where directed by the said sugar company, such rock will not be accepted nor paid for by said sugar company."

Another provision is as follows:

"The said quarrymen agree to properly quarry, break, haul and deliver such rock as fast and in such quantities as the sugar company may desire; all of said rock to be delivered between the 1st day of May, 1917, and the 1st day of December, 1917; said rock to be weighed at the designated place of delivery, and receipts issued therefor by the weighmaster. Such weights shall become final and conclusive and binding upon both of the parties hereto."

It was also agreed that, if the contractors at any time refused or neglected to supply properly skilled workmen or laborers, or tools, or failed in any respect to prosecute the work with promptness and diligence, or failed in the performance of any of the agreements, the sugar company might, at its option, terminate the contract and have immediate access to the quarry, together with the right to employ and use the necessary workmen, laborers, teams, or tools to fully carry out the provisions of the agreement; the cost and expenses of such operation and employment to be chargeable to the contractors. Another stipulation reads as follows:

" * * * The sugar company assumes no responsibility whatever in connection with the work herein contracted for, or in connection with the operation of the quarry aforesaid, but that the said quarrymen assume all such responsibility, whether for wages and moneys due to workmen, laborers, teamsters, or other persons, for performing the work herein contracted for, or whether damages, of whatever kind or nature, caused by or arising from or incidental to the performance of such work."

By another provision of the contract the sugar company agreed to pay to the contractors one dollar and sixty cents for each ton of rock delivered at the company's factory at Logan, Utah, and one dollar and seventy cents for each ton of rock so delivered at the Providence spur track of the Ogden, Logan & Idaho Railway Company and accepted by the said sugar company, payments to be made on the fifteenth of each month for the rock delivered during the preceding month.

On June 18, 1917, Phillip Stricker, the deceased, and Wil-

liam Óliverson entered into a written agreement with said Fuhriman and Theurer (above referred to as "contractors" and as "quarrymen") in which Stricker and Oliverson agreed to perform all the labor necessary in drilling holes, loading and shooting same, and all other labor necessary or incident to shooting down 20,000 tons of lime rock at the sugar company quarry. Stricker and Oliverson agreed to drill such number of holes as might be necessary in the prosecution of said work, and to do it in a workmanlike manner, and to do all work contemplated by the contract for the sum of one dollar and sixty cents per foot of depth of each of the holes drilled for the shooting of the rock, provided that no holes should be drilled to a less depth than fifteen feet nor to a greater depth than twenty-four feet. Payments for the work done were to be made on the fifteenth of each month for the work completed during the preceding month. The contractors, Fuhriman and Theurer, were to pay for all powder used in the prosecution of the work at the cost price of the same and to furnish necessary drills for use in carrying on the work. It was further agreed that Stricker and Oliverson should act upon their own judgment as to the manner of prosecuting the work, and they were to be in all respects free from any control whatsoever on the part of Fuhriman and Theurer. Stricker and Oliverson were to assume all risks of accident to them or their employés from the conditions obtaining in the quarry, in drilling the holes or loading or shooting same, and generally as to all things connected with the prosecution of the work contemplated by the contract. They agreed to hold the contractors, Fuhriman and Theurer, harmless from all claims or demands whatsoever because of or on account of injury occasioned to either persons or property in the prosecution of the work.

Oliverson was a witness before the commission, and his undisputed testimony removes any doubt which may appear from the contract as to the capacity in which he and Stricker were working. He testified that he and Stricker hired and needed assistants, took complete charge of them, paid their

wages, and that Fuhriman and Theurer had nothing to do with either of them or the men they employed. Oliverson and Stricker divided the profits, which amounted to about $180 per month each. They received their board in addition to the pay named in the contract. No suggestions were ever made to them by anybody as to when they should drill. They did their own work in the way they wanted to. If the holes were not fifteen feet deep, they received no pay for them. Their tools, except a hammer, were furnished by the contractors. They were not told when to work or anything about it—when or where to drill nor how to drill. Neither of the contractors at any time exercised any control over them as to the manner of doing the work. The witness testified that he and Stricker at all times did as they saw fit without any interference by any one. It appears from the testimony that all the employés of Fuhriman and Theurer, about six or eight, not including the teamsters, were insured in the state insurance fund except Stricker and Oliverson, and the latter were not insured because they were thought to be, and treated as, independent contractors. The agreement was to board Stricker and Oliverson, though that was not in the written contract.

Mrs. Stricker testified that her husband was to receive fifty cents per day extra; that she had been so informd by Theurer; but that was denied by Theurer. It is claimed by the applicants that under the contract of Fuhriman and Theurer with the sugar company they were employés of the sugar company, and not independent contractors, and, being merely employés, they could not contract with Stricker and Oliverson and change the character of the latter so as to make them independent contractors, and not employés of the sugar company; "in other words, Fuhriman and Theurer, being servants, and not independent contractors, could not lift Phillip Stricker to an independent subcontractor, because they had no authority under their own employment other than being mere servants."

Two questions, therefore, are involved in this case: (1) Were Fuhriman and Theurer independent contractors? and

(2) if they were independent contractors, were Stricker and Oliverson also independent contractors?

According to the Industrial Commission or Workmen's Compensation Act (section 3111, Comp. Laws Utah 1917), an "employé" is defined as:

"Every person    *    *    *    in the service of any person, firm, or corporation employing four or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written.    *    *    *"

The statutory definition adds nothing to the generally accepted definition of "employé." An "employé" is one who works for and under the control of another for hire. See 2 Words and Phrases (New Series) 261.

The definition of an "independent contractor" is equally well settled. An independent contractor is one working for another who has no control as to the means by which the work is accomplished. As stated in 2 Words and Phrases (New Series) 1034, an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work. Many other definitions of what constitutes an independent contractor are given in Words and Phrases, but there is no departure from the general principle that, where a person lets out work to another under contract, preserving no control over the work or workman, the relation of contractor and contractee exists, and not that of master and servant," and that, "if one renders service to another in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished, he is an independent contractor."

It is vigorously argued by counsel for applicants that the contract entered into between Fuhriman and Theurer and the Amalgamated Sugar Company conspicuously fails to measure up to any standard definition of an independent contract, and in support of their contention they cite *Pot-*

*torff* v. *Fidelity C. M. Co.*, 86 Kan. 774, 122 Pac. 120; *In re Rheinwald*, 168 App. Div. 425, 153 N. Y. Supp. 598; *Wooton* v. *Dragon Con. M. Co.*, 54 Utah 459, 181 Pac. 596; *Avery* v. *Supervisors*, 71 Mich. 547, 39 N. W. 742; *Erath & Flynn* v. *Allen & Son*, 55 Mo. App. 107; *Bowen* v. *Aubrey*, 22 Cal. 571; *Arizona-Hercules Copper Co.* v. *Crenshaw*, 184 Pac. 998; *Kniceley* v. *West Va. M. R. Co.*, 64 W. Va. 278, 61 S. E. 811, 17 L. R. A. (N. S.) 370; *Cockran* v. *Rice*, 26 S. D. 393, 128 N. W. 583, Ann. Cas. 1913B, 570; *Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 679; *Nelson* v. *American Cement Plaster Co.*, 84 Kan. 797, 115 Pac. 578; *Hamilton* v. *Oklahoma Trading Co.*, 33 Okl. 81, 124 Pac. 38; *Cooper* v. *City of Seattle*, 16 Wash. 462, 47 Pac. 887, 58 Am. St. Rep. 46; *Norwegian-Danish Church* v. *Home Tel. Co.*, 66 Wash. 511, 119 Pac. 834; *Derr Const. Co.* v. *Gelruth*, 29 Okl. 538, 120 Pac. 253; *De Palma* v. *Wienman*, 15 N. M. 68, 103 Pac. 782, 24 L. R. A. (N. S.) 423; *City of Tiffin* v. *McCormack*, 34 Ohio St. 638, 32 Am. Rep. 408; *Interstate Coal Co.* v. *Trivett*, 155 Ky. 795, 160 S. W. 731; *Waters* v. *Pioneer Fuel Co.*, 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564; *Employers' Indemnity Co.* v. *Kelly Coal Co.*, 156 Ky. 74, 160 S. W. 914, 49 L. R. A. (N. S.) 850.

All the cases cited are readily and easily distinguishable from the instant case, except that of *In re Rheinwald*, 168 App. Div. 425, 153 N. Y. Supp. 598, which squarely supports the contention of applicants in an able and vigorous opinion.   Speaking for himself alone, the writer would be inclined to adopt the reasoning of the New York case, but is prevented from doing so by two reasons:   (1) Because the case was overruled by the Appellate Division, in 174 App. Div. 935, 160 N. Y. Supp. 1143; and (2) the question involved in this case is controlled by *Dayton* v. *Free et al.*, 46 Utah, 277, 148 Pac. 408.   In that case Free and Taylor had a written contract with a mining company to construct a tunnel and to provide all materials and perform all work according to specifications, and were to be paid by the linear foot of tunnel driven.   If they failed or refused for six months to do the amount of work stipulated in the specifi-

cations, or if the company had not sufficient funds to justify continuance of the work, the company reserved the right to terminate the contract, but in the event it terminated it without fault of the contractors it was to pay them for all work completed and purchase from them all machinery, appliances, tools, etc., on hand. It was further stipulated in the contract, article 6, that—

"The contractor agrees that he will employ no person on the work, or in or about the premises herein referred to, unless such persons are satisfactory to the company or its agent, and further agrees to furnish said company, when requested, with a full list of all men employed by him, and that he will promptly discharge any man so employed, at the request of said company, in case a reasonable and sufficient cause is assigned therefor."

Provisions were made in the contract for laying track, pipes, and timbering the tunnel, timbers, pipes, and track to be placed as designated by the company's engineer. The company was required to furnish machinery that was specified and also boarding houses. It also reserved the right to conduct mining operations through the tunnel as it might desire, and the right to order additional work and to make changes in the work. It provided that all imperfect work or material, when pointed out by the engineer of the company, should be immediately remedied and made good by the contractor. These were the salient features of the contract, and it was contended by plaintiff that the relation between the company and the contractors was not that of an independent contractor. This court held that the claim was not tenable. What was said in *Dayton* v. *Free* is applicable here:

"The things pointed to, in our judgment, do not justify a finding that the company reserved the right to direct, control, or superintend the work, or that it in fact directed or controlled the time or manner of doing it, or the means and methods by which the results were to be accomplished."

Another case in point is *Callaghan* v. *Salt Lake City*, 41 Utah, 300, 125 Pac. 863.

We find nothing in the sugar company contract that brings this case within the rule invoked by applicants. No testimony has been introduced tending to show that the contract

was a subterfuge to evade the provisions of the Workmen's Compensation Act (Comp. Laws 1917, sections 3061-3165). Contracts of that kind should be closely scrutinized by both the Industrial Commission and the courts, and no one should be permitted to shift or evade responsibility by contracts apparently designed to avoid the provisions of the Compensation Act. In this case, however, there is nothing to impeach the bona fides of either of the contracts herein referred to. Under all the authorities that we have examined and especially in the light of *Dayton* v. *Free,* supra, the contracts are not those between employer and employé. Fuhriman and Theurer and Stricker and Oliverson must all be held, under the contracts and the circumstances of this case, to be independent contractors.

The decision of the Industrial Commission is therefore affirmed.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.