# COMMISSION OF FINANCE et al. v. INDUSTRIAL COMMISSION et al.

No. 7726.   Decided January 4, 1952.   (239 P. 2d 185.)

See 71 C. J., Workmen's Compensation Acts, sec. 919. Independent contractor, workmen's compensation test for. 58 Am. Jur., Workmen's Compensation, sec. 138; 147 A. L. R. 828.

*F. A. Trottier, George F. Reall,* Salt Lake City, *J. A. Howell,* Ogden, for plaintiff.

*Clinton D. Vernon,* Atty. Gen., *Andrew R. Hurley,* Salt Lake City, for defendant.

HENRIOD, Justice.

Review of an Industrial Commission award to Sam E. Williams, for disabling silicosis claimed to have resulted under circumstances rendering plaintiffs liable for compensation payments under the occupational disease statute. The award is affirmed, each side to bear its costs of review.

Plaintiffs assail the Commission's findings that (1) defendant was an employee of plaintiff Park City Consolidated Mines Co., not an independent contractor, and that (2) he was injuriously exposed to silicon dioxide dust while working for the company for the 60 days required by Title 42-1a-14, U. C. A. 1943.

Defendant has been an underground miner for 25 years. He was employed as such for plaintiff company from 1934 to 1942, and for the Silver King Coalition Mines Co. from 1942 to 1948, and thereafter by plaintiff, either as independent contractor or employee until mid-1950, when he became disabled. In August 1946, while employed with the since the contract specifically provided that the company to inspect its mine. Here he was an independent contractor, since the contract spefically provided that the company was to have "no control whatsoever" as to the time when or manner in which said examination should be made. In May 1947, while still employed by Silver King, he signed another contract with plaintiff company, agreeing to re-timber *the shaft* of the company with "15 sets more or less," furnish the labor, look after the paying of all bills in connection with said labor, and obtain waivers of liens, the company to furnish all materials, pay defendant on a basis of labor cost, plus 10% for overhead expense and the services of defendant. Unlike the previous contract, there was no express language indicating that defendant was an independent contractor having full control as to time and manner of performance. We think such circumstance not controlling, but it is pointed out that after the 15 sets were installed, defendant and other miners completed another 60 sets. Although the contract only called for timbering *the shaft,* the record indicates that early in 1949, after the shaft was timbered, defendant and the others worked in a raise which was separate and apart from the shaft, laid rails in a tunnel, did mucking work, and helped to install a compressor, all under the supervision and direction of Kasteler, the company's superintendent, and

for about two months prior to June 13, 1949 (when the company sent him and others to Colorado), worked on a drift where, he testified, he had no control as to how the same was to go, and no authority to select the manner of performance. At least the work during these last two months was consistent with a master-servant relationship. Defendant and the others received the prevailing miner's wage in the area and worked the conventional 8-hour, 5-day week. On one occasion, defendant significantly turned in an overtime slip when he worked a double shift. There is also testimony in the record to the effect that defendant and the others took orders from Kasteler, and that the latter outlined where the work was to be done, selected the places to work, directed where the muck was to go, and supervised the work being present with the men almost every day. The company furnished all tools and materials, and the defendant stated he had no particular piece of work to do at any particular place.

Under such facts, the Commission would not be arbitrary and capricious in concluding that the contract for the 15 sets of timber in the shaft had been completed, and that work elsewhere in the mine was contemplated and initiated under a master-servant relationship, without a written contract, even though the rate of pay remained the same. Taking such view, the defendant would have satisfied the statutory requirements of time of exposure, since if taking of time be necessary, such exposure need not be on successive days, but only cumulative after July 1, 1941. *Kennecott Copper Corporation* v. *Industrial Commission*, 118 Utah 140, 205 P. 2d 829. Whether it was an injurious exposure is treated later.

In fairness to plaintiffs, it must be conceded that there was also substantial evidence pointing to an independent contractor situation. For instance, three months after defendant executed the second written contract, and on September 19, 1947, the defendant, although not considering himself to be an independent contractor, listed himself as an

employer, appled for and obtained a workmen's compensation and occupational disease policy from the State Insurance Fund, including the laborers but not himself therein, which remained in force until June 13, 1949, when he asked that it be cancelled on the occasion of his being sent to Colorado by the company (from whence he later returned to Utah, working for the company thereafter unquestionably as an employee for at least 27 days). Until cancellation of the policy, he made regular reports to the Insurance Fund, deducted and paid social security on the men, made regular premium payments on the policy, although reimbursed by plaintiff company. In January 1949, while the policy was in force, he lost an eye but made no claim for workmen's compensation benefits on account of the loss because, he stated, he understood he was not covered. He had asked the Insurance Fund officials twice if he could be included in the coverage and was told that he could not. Although the Insurance Fund officials did not know it, the company had advanced to the defendant the $200 deposit required in taking out the policy, accepting a non-interest bearing note, which later was returned to defendant when the latter upon cancellation of the policy turned over to the company the deposit refund received from the Insurance Fund.

The last mentioned evidence lends much merit to plaintiffs' contention that such facts point up an independent contract, and were this evidence not in conflict with that set out hereinabove which points up a master-servant relationship, we would feel constrained to upset the findings of the Commission. But we cannot choose between two sets of facts, both of which are substantial. Since there is substantial evidence in support of the findings, we are compelled to sustain the Commission, under Title 42-1-79, U. C. A. 1943 as amended, and the rule often enunciated by this court, as reflected in *Camacho* v. *Industrial Commission*, 119 Utah 181, 225 P. 2d 728, and cases therein cited.

With respect to plaintiffs' contention that there was no evidence of injurious exposure to silicon dioxide dust as is required, under the statute, we point to defendant's 25 years of underground mining, almost continuous to the time of his disability. The record shows without dispute that defendant suffered a serious silicotic condition,—a common result of continued underground mining attendant with injurious exposure. Added to these two admitted facts, the record seems to contain a tacit admission that such injurious exposure was a fact, since counsel for defendant proposed a stipulation to this effect, and the examiner stated such stipulation would be unnecessary since the defendant had the disease. Perhaps the stipulation should have been allowed, if agreeable to both sides, or further proof of exposure permitted, but since neither counsel for plaintiffs or defendant pressed the matter further, it is only fair to assume that their silence gave rise to such tacit admission. We believe under such state of the record, the Commission reasonably could conclude that defendant was injuriously exposed to the dust while employed by plaintiff company, for a period satisfying statutory requirements.

Plaintiffs' final contention is that defendant, by representing himself to be an employer, is estopped now to assert otherwise. There is evidence in the record that plaintiff company, for some undisclosed reason, acceded to the procedure involving taking out the policy, and certainly, being the principal obligor for the payment of workmen's compensation, if due, the company itself could not assert an estoppel, having joined in any representation that would be its basis although, if there were an estoppel, the Insurance Fund would not be so precluded. On one other occasion, as the record will show, the company had reimbursed another mining company for the latter's payment of wages to workmen performing work for the plaintiff company. Why such course of conduct involving an undisclosed interest was indulged is not made clear by

the record, but it is presumptively legitimate and not a subterfuge as counsel for defendant would have us believe. From the whole record, it appears convincing that the defendant was not guilty of an intended deception, generally regarded as an essential element of an estoppel. Rather, it would seem that having worked as a miner for this company for many years, he was simply following a course of conduct suggested by the company, without indulging niceties between master-servant and independent contractor conceptions, and without thinking of himself as anything other than an employee.

WADE, McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice.

I concur, but with the observation that a contract which expressly provides that the party employing the claimant is to have "no control" or "no control whatsoever" does not prevent the Industrial Commission from determining whether the so-called independent contractor was nevertheless an employee. The actual relationship depending largely but not altogether on the right of control—whether exercised or not—governs. What the parties themselves designated their relationship is of secondary importance. How they have conducted their relationship; whether there was a right of control either direct or indirect—usually determined by the conduct of the employer (I use this word in this sentence in its larger sense because an independent contractorship is a type of employment) but also on whether the right existed although unexercised—are the real determiners. We have so held in: *Stricker* v. *Industrial Commission,* 55 Utah 603, 188 P. 849, 19 A. L. R. 1159; *Gogoff* v. *Industrial Commission,* 77 Utah 355, 296 P. 229; *Parkinson* v. *Industrial Commission,* 110 Utah 309, 172 P. 2d 136. See also my article entitled "Determination of Employer-Employee Relationships in Social Legislation," 41 Col. L. R. 1015, June 1941.