**Wilma Ainge LEE, guardian ad litem for Tad H. Lee, a minor, and Steve Murri, Plaintiffs and Appellants,**

v.

**CHEVRON OIL COMPANY, Defendant and Respondent.**

**No. 14869.**

Supreme Court of Utah.

June 15, 1977.

Robert M. McRae, Salt Lake City, for plaintiffs and appellants.

Raymond M. Berry and Scott Daniels, Snow, Christensen & Martineau, Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Before us is an order of the trial court granting partial summary judgment in favor of defendant. We affirm. No costs awarded. All statutory references are to U.C.A.1953, unless shown differently.

Plaintiffs brought this action to recover damages for their personal injuries. The injuries were sustained because of an explosion of fumes from an oil storage tank, belonging to defendant.

After completion of discovery, defendant moved for partial summary judgment on the ground plaintiffs were statutory employees of defendant, and the exclusive remedy was workmen's compensation, as provided in Sec. 35–1–60. Defendant's motion was granted.

Plaintiffs were employed by Oaks Construction Company. Oaks was engaged on an hourly basis to clean storage tanks for defendant. These tanks were located on premises, known as Ute Tribal No. 1, Bluebell Field, Duchesne, Utah. Defendant was engaged in the production, storage, and transportation of crude oil. Plaintiffs received workmen's compensation benefits for their injuries. The trial court ruled the facts admitted by all the parties establish plaintiffs were the employees of Chevron, which retained control and supervision over the subcontractors engaged in the cleaning of defendant's oil tank. Further, the cleaning was a part or process of Chevron's business of production, refining, and selling of oil products; therefore, plaintiffs' exclusive remedy, as statutory employees, was workmen's compensation.

The sole issue on appeal is whether defendant was the statutory employer of plaintiffs within the provisions of Sec. 35–1–42.

The relevant provisions of Sec. 35–1–42(2), specify:

Where any employer procures any work to be done wholly or in part for him by a contractor. over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractor, shall be deemed, within the meaning of this section, employees of such original employer. . . .

There are two elements in the foregoing provision which must be satisfied for one to be deemed a statutory employer.[1] First, he must have the right to control execution of the work for which he has contracted. Secondly, the work, which he has contracted to be performed must be "a part of process in the trade or business" of such employer.

On appeal, plaintiffs concede that under the undisputed facts, defendant had retained supervision and control over their work to fulfill the requirements of the first element. However, plaintiffs vigorously contend the facts do not establish as a matter of law the work of cleaning the storage tanks constituted "a part or process in the trade or business" of Chevron Oil Company.

1. *Parkinson v. Industrial Commission,* 110 Utah 309, 172 P.2d 136 (1946).

Plaintiffs urge a narrow interpretation of the second element, confining the work covered thereunder to a primary income producing activity of the employer. Under this theory, it is plaintiffs' contention Chevron expects no income from the cleaning of storage tanks, and Chevron does not perform this service for anyone else. In fact, Chevron contracts with others to perform this work and includes the costs thereof as an item of overhead, which is passed on to the consumer as a cost of its goods. Under such circumstances, it is clear that Chevron derives no profit or gain from the cleaning of its oil tanks; therefore, such work, according to plaintiffs, is not "a part or process in the trade or business of the employer."

The State of Connecticut has a similar statutory provision,[2] the concepts of which have been delineated in a series of decisions. The terms are interpreted in accordance with the purpose of the statute, viz., to protect employees of minor contractors against the possible irresponsibility of their immediate employers, by making the principal employer, who has general control of the business in hand, liable as if he had directly employed all who work upon any part of the business which he has undertaken.[3]

*Fox v. Fafnir Bearing Co.*[4] is particularly applicable to the instant case. Fox was employed by one McGrath, who was in the window cleaning business. McGrath entered into a contract with the Fafnir Bearing Company to clean the windows of its factory at a certain price per window. Fox sustained injuries while washing a window. The issue before the court was whether the washing of windows in defendant's factory was a part or process in its trade or business.

The court stated defendant's business was the manufacture of ball bearings, and concededly the work of Fox was not a "process" in the art of making ball bearings. However, the business did require defendant to maintain and operate a factory with the necessary facilities for the production and marketing of its products. Any work which was an essential part of the operation or maintenance of defendant's factory was a part of its trade or business, although not a process in the actual work of manufacturing ball bearings.

The court explained:

The plaintiff's work of window washing was work which had to do with the maintenance of the factory buildings in good condition for the manufacturing processes there conducted, and which could fairly be said to be essential for that purpose—work similar in character to that of scrubbing the floors, cleaning the offices, and ordinary janitor work. Such work is customarily done by regular employees in the daily routine of their duties in the factory. It is clearly distinguishable from work done in connection with the repair and alteration of the factory buildings. It is a part of the work of keeping the employer's factory in running condition, and therefore a part of its "trade or business," though not directly connected with any manufacturing process. To limit the application of section 5345 to work done in the actual process of manufacture would be to adopt a construction not required or permitted by the language of the act, and entirely at variance with our settled policy of construing the Compensation Act broadly in order to effectuate its purpose.[5]

In *Brown v. Waterbury Battery Co.*[6] the court ruled the construction of a new facto-

---

**2.** C.G.S.A. Sec. 31–291, which provides: "When any principal employer procures any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and *the work* so procured to be done *is a part or process in the trade or business of such principal employer,* . . . ." (Emphasis supplied.)

**3.** *Fox v. Fafnir Bearing Co.,* 107 Conn. 189, 139 A. 778, 58 A.L.R. 861 (1928).

**4.** Note 3, supra.

**5.** At p. 780 of 139 A.

**6.** 129 Conn. 44, 26 A.2d 467, 150 A.L.R. 1210 (1942).

ry or an addition to an existing structure was not "a part or process in the trade or business" of the defendant, which manufactured batteries. The court cited *Fox v. Fafnir Bearing Co.,* and stated it was distinguishable on the ground the work therein was necessary to maintain the defendant's premises in a suitable condition for conducting its trade or business, and in this sense was "part" thereof within the statute.

In *King v. Palmer*[7] the court reviewed a number of cases and set forth the following principles:

> . . . the words "process in the trade or business" included all those operations which entered directly into the successful performance of the commercial function of the principal employer. . . On the other hand, where the work in which the employee is engaged does not directly enter into the performance of the commercial function of the claimed principal employer but only affords facilities for the conduct of his trade or business . . . the work is not a "process" in that trade or business. This is so as regards the construction of a factory building, . . . and the construction of a partition in a factory; . . . . If the work is of such a character that it ordinarily or appropriately would be performed by the principal employer's own employees in the prosecution of its business, or as an essential part in the maintenance thereof, it is a part of process of his work.[8]

In *San Isabel Electric Association, Inc. v. Bramer*[9] the court in discussing the "statutory employer" statute stated the legislative intent was to prevent employers from evading compensation coverage by contracting out work instead of directly hiring the workmen. Thus the statute covers all situations in which the subcontracted work is such a part of the constructive employer's regular business operation as he would ordinarily accomplish with his own employees.[10]

Significantly, the assorted repair and maintenance activities associated with oil drilling and production have been held "part" of the business of an oil company.[11]

Here, the storage of crude oil was an integral part of defendant's business of producing, storing, and transporting crude oil. The cleaning of the storage tanks to maintain them in a suitable condition was necessary for the conduct of defendant's business, and thus plaintiffs' work was a "part" in the "trade or business" of defendant.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

**7.** 129 Conn. 636, 30 A.2d 549, 552 (1943).

**8.** Also see *Zimmerman v. MacDermid,* 130 Conn. 385, 34 A.2d 698 (1943); *Gigliotti v. United Illuminating Company,* 151 Conn. 114, 193 A.2d 718 (1963); *Kasowitz v. Mutual Construction Company,* 154 Conn. 607, 228 A.2d 149 (1967); *Mancini v. Bureau of Public Works of Metropolitan District,* 167 Conn. 189, 355 A.2d 32 (1974).

**9.** 182 Colo. 15, 510 P.2d 438 (1973).

**10.** See 1 A Larson's Workmen's Compensation Law Sec. 49.12, pp. 9–12: " . . . But, with a surprising degree of harmony, the cases applying these assorted phrases agree upon the general rule of thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees . . . ." Also see *Howard v. Vulcan Materials Company,* (5 Cir. 1974), 494 F.2d 1183, 1184, wherein the court stated that contracted work is a part of the principal's trade, business, or occupation if it is so necessary to its operation that save for the contractor, it would have to hire workers of its own to perform the task.

**11.** Id., pp. 9–23 and 9–24; *Purkable v. Greenland Oil Company,* 122 Kan. 720, 253 P. 219 (1927).