[No. 57139-2. En Banc. April 4, 1991.]

DOUGLAS K. DUVON, *Respondent,* v. ROCKWELL
INTERNATIONAL, *Petitioner.*

*Davis Wright Tremaine,* by *Stephen M. Rummage* and *Robert S. Gruhn,* for petitioner.

*Critchlow & Williams,* by *David E. Williams* and *Alex J. Skalbania,* for respondent.

BRACHTENBACH, J.—Respondent, Douglas K. DuVon, sued his former employer Rockwell International Corporation (Rockwell), for injuries from a machine designed and constructed by Rockwell. The trial court denied petitioner Rockwell's motion for summary judgment. The Court of Appeals affirmed. *DuVon v. Rockwell Int'l Corp.,* 57 Wn. App. 465, 788 P.2d 607 (1990). We affirm.

A brief statement of undisputed facts is necessary to frame the issues. Rockwell was a prime contractor with the United States Department of Energy (DOE) to operate the

Hanford Nuclear Reservation. During its contract Rockwell designed and constructed equipment for on–site use, including portable exhausters.

In 1987 Westinghouse Hanford Company (Westinghouse) replaced Rockwell as prime contractor. Pursuant to the DOE contract, Westinghouse took possession of all equipment used by Rockwell at Hanford, including the portable exhausters. Respondent, who had worked for Rockwell since 1983, became an employee of Westinghouse in the same job classification. Five days after becoming an employee of Westinghouse, respondent was injured in an incident involving one of the portable exhausters.

The portable exhausters removed fumes from buried tanks to permit in–tank photographs. The exhausters had a series of heating and filtering systems to remove contaminants before they were passed though a radiation monitor and released through the exhaust stack. Respondent, an electrician, and others were called to determine why an exhauster which was hooked up to a tank had failed. Apparently an inlet butterfly valve remained open while an exhaust pump operated, thereby permitting the exhausting of gasses even though the ventilation/filter system had failed. Respondent was exposed to toxic levels of ammonia gas, the characteristic odor of which was masked by other gasses. According to an affidavit from respondent's medical expert, respondent has suffered serious permanent lung damage with substantial disability.

Respondent pursued an industrial insurance claim under his employment by Westinghouse. This separate action is respondent's election to seek damages from a third person (Rockwell) not in his same employ, as authorized by RCW 51.24.030(1). Respondent alleges negligence by his former employer, Rockwell, in design and construction of the exhauster and negligence in failure to provide adequate procedure guidance to shut the inlet butterfly valve when the ventilation/filter system was down. A Westinghouse critique report attributed the apparent cause of the incident to design, procedure inadequacy, and personnel.

In the trial court Rockwell's theory was that Rockwell was not a third party under the Industrial Insurance Act and was therefore immune from suit under RCW 51.04.010. Alternatively, Rockwell argued that if it does not have Industrial Insurance Act immunity, it is not liable under tort or product liability principles.

In its brief to the Court of Appeals, Rockwell stated the issue this way:

> Is DuVon's exclusive remedy for his work–related injury a worker's compensation award, when he was injured on the worksite by equipment built by Rockwell, and when the equipment was built especially for the job site and never entered the stream of commerce?

Brief of Appellant, at 1.

In its petition for review brief Rockwell reframed the issues as follows:

> A. Whether Rockwell owed a duty of care to persons other than its own employees in building equipment solely for use on its worksite, and not for resale into the stream of commerce?
>
> B. Whether Douglas Duvon, who was a Rockwell employee until five days before his injury, can assert a claim against Rockwell for third party liability under the worker's compensation statute, even though Duvon was injured while working at the same job classification, pay rate and worksite as he had while employed by Rockwell?

Brief of Petitioner (Petition for Review), at 1.

Throughout, petitioner has relied heavily upon *Corr v. Willamette Indus., Inc.,* 105 Wn.2d 217, 713 P.2d 92 (1986).

We restate the issues:

1. May a former employer be a third party under RCW 51.24.030(1) when the employee is injured by a device designed and constructed by the former employer and when the employee is injured 5 days after he is employed by a company which succeeded, by contract, to possession and use of the faulty machine? We hold the former employer is a third party and therefore subject to suit.

2. Does a former employer which allegedly was negligent in design, construction and in establishing operational procedures for a machine owe a duty to a former employee,

injured while using the machine in the employ of another, when the former employer was not a commercial manufacturer of such machine and the machine was not put into the stream of commerce? We hold that there may be such duty. The rationale of *Corr v. Willamette Indus., Inc., supra,* is not applicable.

This case is before us on denial of a motion for summary judgment. "Summary judgment will be granted only where the pleadings, affidavits, depositions and admissions on file demonstrate that there is no genuine issue as to any material fact and the party bringing the motion is entitled to judgment as a matter of law." *Christen v. Lee,* 113 Wn.2d 479, 488, 780 P.2d 1307 (1989). The facts of the present case are not at issue. Therefore, petitioner is entitled to judgment as a matter of law only if it was immune from common law suit or was not negligent. The only issue pertaining to negligence raised on appeal is whether petitioner owed a duty of care to respondent. Whether such a duty is owed is a question of law. *Pedroza v. Bryant,* 101 Wn.2d 226, 677 P.2d 166 (1984). Likewise, under the uncontested factual circumstances of this case, the immunity issue is a question of law. *See Reese v. Sears, Roebuck & Co.,* 107 Wn.2d 563, 565, 731 P.2d 497 (1987). On summary judgment this court takes the position of the trial court, reviewing questions of law de novo. *See Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

## I
### IMMUNITY

Rockwell claims that it is immune from common law suit under the exclusive remedy provision of the Industrial Insurance Act. RCW 51.04.010. RCW 51.24.030(1) provides an exception to this immunity if the person who caused the injury is a third person, "not in a worker's same employ", in other words, an employer or co-worker.

Petitioner argues that it is entitled to immunity under the Industrial Insurance Act even though it is no longer respondent's employer. This argument is based on the fact

that petitioner was respondent's employer until 5 days before the accident. During all that time, petitioner had fulfilled its industrial insurance obligations. Petitioner therefore argues that to not allow it protection here is to effectively deprive it of the protection it paid for while respondent worked for it.

■■ This argument is so meritless that it does not warrant response, aside from noting that respondent was not petitioner's employee *when the accident took place.* *See* RCW 51.04.010; 2A A. Larson, *Workmen's Compensation* § 65.13 (1989). ("The controlling fact in establishing exclusiveness is the relationship of the parties at the time of occurrence of the injury. Their relationship at other times, such as the time of the employer's misconduct . . . is immaterial." (Footnote omitted.))

Nonetheless, petitioner cites two cases which it contends stand for the proposition that some third parties, such as petitioner, can claim an employer's immunity under the proper circumstances. Brief of Petitioner (Petition for Review), at 17. In *Wolf v. Scott Wetzel Servs., Inc.,* 113 Wn.2d 665, 782 P.2d 203 (1989), the issue was whether an injured employee could bring a third party action against the claims administrator of a self–insured employer for wrongful delay or termination of workers' compensation benefits. The court held that the employee could not bring a civil action because the claims administrator was essentially the employer's agent for purposes of administering the industrial insurance laws. The claims administrator was treated as the employer for purposes of immunity because the claims administrator represented the employer. This is not the case here. Petitioner, the former employer, does not represent Westinghouse, the present employer, in any capacity. Rockwell and Westinghouse are entirely separate entities. Rockwell has no connection with Westinghouse for purposes of administering the industrial insurance laws: *Wolf* is *not even relevant.*

Petitioner also relies on *Coulter v. State,* 93 Wn.2d 205, 608 P.2d 261 (1980), where the court held that an injured

worker could not sue an employee of the Department of Labor and Industries (Department) who had inspected a defective machine immediately before the accident in which the employee was injured. The primary basis for that decision was that RCW Title 51 had abolished civil jurisdiction over industrial insurance claims except as provided by that title and RCW Title 51 did not provide for suits against the Department. In support of this interpretation, the court noted that the Department is often required to bring third party actions on behalf of employees who are not diligent in pursuing their claims. The court found that the Legislature could not have intended the Department to sue itself as a third party. Therefore, far from finding that the Department of Labor and Industries enjoyed the employer's immunity from suit, as defendant claims, the court found that the Department enjoyed its own immunity from suit based on the industrial insurance statutes and sound policy. Neither the statutes nor sound policy suggest the same result in the present case.

Finally, petitioner contends, without reason or authority, that if its negligence was in the defective design, the tort occurred while respondent was petitioner's employee. To state the proposition is to reject it, which we do. We therefore hold that petitioner is a "third party" as contemplated by RCW 51.24.030(1) and is not immune from common law suit.

## II
### DUTY

As previously noted, this case is before us on denial of summary judgment. It is not clear from the summary judgment order whether the trial court actually passed on the duty issue or limited itself to the immunity issue. This is in part due to the confused reasoning of the memoranda with which it was presented by the parties. However, there is an indication in some of the papers which the court considered that the duty issue was presented. Also, the main focus of petitioner at the summary judgment and appeal stage has

been the *Corr* case, which was decided on the duty issue. Therefore, we assume the trial court found that petitioner *could* owe a duty to respondent. In determining whether the trial court was correct, we need only find that a duty could be owed. The following discussion is not, therefore, conclusive or binding in further proceedings, but is merely illustrative of the fact that a duty could be owed and that the denial of summary judgment was therefore proper.

Petitioner claims that *Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 713 P.2d 92 (1986) is directly on point and mandates reversal of the trial court's decision. Petitioner is incorrect on both counts. In *Corr*, the worker, Corr, was employed by Willamette Industries, Inc. Willamette then merged with Corco, Inc., acquiring, among other things, a bulk bin compressor which Corco had made for its own use. Corr was later injured by the bulk bin compressor. Corr received industrial insurance benefits from Willamette as his employer. Corr then sued Willamette as the successor to the liabilities of Corco,[1] in effect suing Corco.

The court found no duty of care running from Corco to Corr before the merger. Since Corr could not have sued Corco before the merger, it could not sue Willamette as the successor to Corco's liabilities, after the merger. The court stated that

> an injured claimant never could have sued Corco as a third person because Corco had no liabilities or obligations flowing to Willamette's employees. The two bulk bin compressor units were not manufactured for resale or entry into the stream of commerce. From the time of installation until merger, both units remained in Corco's workplace.

---

[1]*Corr* was concerned largely with the "dual persona doctrine," under which "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A A. Larson, *Workmen's Compensation* § 72.81, at 14–229 (1989). That doctrine is not relevant in the present case because plaintiff is not suing his employer. We therefore omit that part of the *Corr* analysis in our consideration of this case.

Only by virtue of the merger did the defective plant equipment transfer from Corco to Willamette. Thus, absent the merger, Corr could have been injured by this machinery only if he had been an employee of Corco. As an employee of Corco, however, Corr would be limited to the exclusive remedies of the workers' compensation act. Corco never owed obligations or had liabilities to persons other than its own employees relative to these compressor units. Accordingly, Corco never could be subject to third person liability. Because Corco could not be subject to third person liability, such liability cannot be imposed upon Willamette simply because the two corporations merged.

*Corr,* at 222–23.

The court's reasoning can be summarized as follows: (a) The goods (compressors) were not "manufactured" by Corco and were not intended to be introduced nor were they actually introduced into the "stream of commerce." Therefore, Corco, during its existence, never had any "obligation or liability" (*i.e.,* duty) to anyone but its own employees relative to the goods (and that obligation was immunized from common law liability by the exclusivity provision of the industrial insurance statute); and (b) the merger (transfer) should not create a duty on the part of Corco's representative, Willamette, when Corco had no duty before the merger.

Like *Corr,* the present case is concerned with the effect the transfer of equipment will have on the duties owed by the transferor to the transferee and its employees. Petitioner argues that, like the merger in *Corr,* the contract succession in this case "created" no duties on the part of the transferor, petitioner Rockwell. Petitioner maintains: (1) There is no duty at all owed by the provider of chattels if the provider is not a "manufacturer" or "seller" who does not intend to put the goods into the "stream of commerce"; and alternatively (2) the contract succession involved in this case is similar enough to the merger in *Corr* that no duty should arise as a result of it because there was no duty before it occurred.

## A
### Petitioner's Contention of No Duty Because
### It Is Not a Manufacturer or Seller

Petitioner's first argument is that the "stream of commerce" analysis found in *Corr* should be taken out of the context of that case and applied to the facts of this case (and indeed, all cases). That is, petitioner interprets *Corr* as providing that *any* entity which produces a good without "manufacturing" or "selling"[2] it and passes it on to another outside the "stream of commerce" cannot possibly owe a duty of care to later users of the product and must therefore be cut off from liability as to the good which it produced or transferred. Petitioner bases this argument on *Corr's* statements that the two bulk bin compressors were not manufactured for "resale or entry into the stream of commerce" and therefore "Corco never owed obligations or had liabilities to persons other than its own employees relative to these compressor units." Brief of Petitioner (Petition for Review), at 11 (quoting *Corr,* at 222).

At the outset, it is significant to note that the opinion in *Corr* is limited to its own facts. *Corr,* at 218, 222.

▉▉▉▉▉ Moreover, contrary to petitioner's suggested analysis, Washington presently adheres to Restatement (Second) of Torts § 388 (1965), which provides

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

---

[2]Defendant can be interpreted as arguing that the product liability act (RCW 7.72.010(1), (2)) defines these terms and that defendant does not fit within that definition. Given our disposition of this issue, we need not determine whether defendant is correct on either count.

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 467–68, 423 P.2d 926 (1967). Comment *c* to § 388 points out that "[t]he rules stated in this Section . . . apply to determine the liability of *any* person who for *any* purpose or in *any* manner gives possession of a chattel for another's use . . .." (Italics ours.) It therefore follows that a non–"manufacturer" who supplies a chattel outside the "stream of commerce" *can* have a duty to subsequent possessors of the chattel, contrary to petitioner's argument. *See McKenna v. Art Pearl Works, Inc.,* 225 Pa. Super. 362, 366–68, 310 A.2d 677, 680–81 (1973) (summary judgment for defendant improper under § 388 where plaintiff was injured by press which plaintiff's employer obtained from defendant who did not make press to be sold).

Therefore, even assuming petitioner is correct in characterizing itself as a nonmanufacturer who did not intend to introduce the exhauster into the stream of commerce, it may still have owed a duty to respondent. The trial court was therefore correct in denying summary judgment.

## B
### Petitioner's Contention of No Duty Because Present Case Factually Similar to *Corr*

Petitioner alternatively contends that even if *Corr*'s "stream of commerce" analysis does not apply to *all* transfers, it does apply to contract successions. We are not convinced that *Corr*'s reasoning can be extended beyond the merger context presented in that case and therefore reject this argument.

In *Corr,* the court determined that a merger should not create a duty in the absorbed corporation which it did not have before the merger. In a merger such as the one at issue in *Corr,* transfer occurs simultaneously with the absorbed corporation's extinguishment. The finding of no duty in *Corr* was therefore largely based on the fact that the transferor, Corco, and transferee, Willamette, became one and

the same as of the moment of transfer. In effect, there was no transfer (and therefore no duty owed) from one entity to another, since at the moment of transfer there was only one entity, the surviving corporation, Willamette.

Petitioner argues that contract successions, like mergers, should not create any duty in the transferor which it did not have before the succession. In support of this argument, petitioner points out that all of the property on the Hanford site, including the exhauster, was actually owned by the government, and petitioner was merely turning possession and use of the equipment over to Westinghouse. Petitioner states that this is the public sector equivalent of a merger. Reply Brief of Petitioner, at 4. Moreover, petitioner reasons that as far as respondent was concerned, there was no transfer. Westinghouse took over the entire plant, including employees, so that the transfer had no effect on the plant employees.

Whether respondent was previously employed by petitioner is only relevant to the immunity question already addressed and has no bearing on the question of what duty was owed after the employment was ended. As to the statement that a contract succession is the equivalent of a merger, petitioner cites no authority. This is because the statement is not true. Petitioner and Westinghouse have not merged into one entity, nor have they otherwise achieved any unitary existence. Unlike the situation in *Corr,* petitioner Rockwell retains its existence separate from Westinghouse following the transfer of the exhauster.

The present case is not remotely similar to *Corr.* We are therefore not persuaded that the narrow holding of that case can be extended to cover the very different facts of this case.

## III
### CONCLUSION

We hold that petitioner is not immune from liability under the Industrial Insurance Act. We further hold that petitioner could have owed respondent a duty of care in

this case. We therefore affirm the denial of summary judgment.

DORE, C.J., UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.