1999 UT 77

**UTAH HOME FIRE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Patrick J. MANNING; William R. Green, dba Green Services; Carol L. Green dba C.B. Construction; and Holmes & Narver Services, Inc., Defendants and Appellant.**

No. 970516.

Supreme Court of Utah.

Aug. 24, 1999.

Eric K. Davenport, Lowell V. Smith, Salt Lake City, for plaintiff.

Roger Taylor Nuttall, Scott D. Brown, Midvale, for Manning.

RUSSON, Justice:

¶ 1 Defendant Patrick J. Manning appeals from the district court's grant of summary judgment in favor of Utah Home Fire Insurance Company declaring that (1) Utah Home Fire's insureds, William R. Green dba Green Services and Carol L. Green dba C.B. Construction, are immune from Manning's suit against them pursuant to the exclusive remedy provision of the Workers' Compensation Act, and (2) the insurance policy issued by Utah Home Fire excludes coverage of Manning's work-related injury.

## BACKGROUND

¶ 2 In 1990, Holmes & Narver Services, Inc., entered into a government contract to perform construction work at the Tooele Army Depot. Holmes & Narver thereafter entered into an agreement with William Green, dba Green Services, wherein Green would install siding at the project. The agreement purported to designate Green as an independent contractor.

¶ 3 Before completion of the siding, Holmes & Narver fired Green and excluded him from the job site. In accordance with their agreement, Holmes & Narver retained the scaffolding Green had erected for use in installing the siding. Holmes & Narver hired temporary employees to complete the siding, and on or about February 1, 1993, one

of those employees, Manning, suffered serious injuries when the scaffolding collapsed.

¶ 4  Manning received workers' compensation benefits from Holmes & Narver. In addition, in May of 1996, he filed an action in federal court against Green and Green's insurer, Utah Home Fire Insurance Company. Manning alleged that Green negligently constructed the scaffolding, thereby causing his injuries. Manning also asserted that he was an intended third-party beneficiary of the liability insurance policy Utah Home Fire had issued to Green and was entitled to breach of contract damages for Utah Home Fire's denial of coverage with respect to his personal injury claims. In response, Utah Home Fire filed an action in state court requesting a declaratory judgment that, under its insurance policy, it was not obligated to defend or indemnify Green[1] in Manning's federal lawsuit. The federal court stayed Manning's action pending resolution of the state proceedings.

¶ 5  In state court, Utah Home Fire and Manning filed cross-motions for summary judgment. Utah Home Fire contended that, as a matter of law, Green functioned as an employee of Holmes & Narver because of the level of control Holmes & Narver retained and exercised over his work; as a result, Manning, also an employee of Holmes & Narver, could not maintain his federal court action against Green because of the exclusive remedy provision of the Workers' Compensation Act, which states:

The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee ... shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer ... and no action at law may be maintained against an employer or against any officer, agent or employee of the em-

ployer based upon any accident, injury or death of an employee.

Utah Code Ann. § 35-1-60 (1988).[2]  Utah Home Fire argued that because this provision protected Green against Manning's suit, Green could not become "legally obligated" for Manning's injuries and, thus, there was no potential liability triggering coverage under the insurance policy. Utah Home Fire argued alternatively that even if the exclusive remedy provision did not bar Manning's action against Green, the insurance policy nonetheless excluded coverage of Manning's personal injury claims.

¶ 6  Manning countered that he could maintain his federal action against Green because Green was an independent contractor of Holmes & Narver, not an employee. Manning relied on Utah Code Ann. § 35-1-62, which provides in relevant part:

When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee ... may claim compensation and ... *may also maintain an action for damages against* subcontractors, general contractors, *independent contractors,* property owners or their lessees or assigns, not occupying an employer-employee relationship with the injured or deceased employee at the time of his injury or death.

Utah Code Ann. § 35-1-62 (1988)[3] (emphasis added). Manning also argued that, as a matter of law, Utah Home Fire's policy did not exclude coverage of his personal injury claims.

¶ 7  In an order of declaratory judgment dated September 23, 1997, the district court granted Utah Home Fire's motion for summary judgment and denied Manning's motion. The court ruled that for purposes of the Workers' Compensation Act, Green was

---

1. Utah Home Fire also contended that it did not have to defend or indemnify Green's wife, Carol L. Green dba C.B. Construction, to whom it had issued an identical insurance policy. Carol Green apparently assisted in installing the siding. Given their unity of interests, and for purposes of clarity, we will refer only to William Green and the insurance policy issued to him.

2. This section is now found at Utah Code Ann. § 34A-2-105 (1997).

3. This provision is now found at Utah Code Ann. § 34A-2-106(1) to -106(4) (1997).

an employee of Holmes & Narver and was therefore immune from Manning's suit under the exclusive remedy provision. The court also ruled that Utah Home Fire properly denied coverage of Manning's claims pursuant to certain provisions in the insurance policy that excluded coverage. This appeal followed.

## STANDARD OF REVIEW

¶ 8 In reviewing the district court's grant of summary judgment, we are presented with questions of law, namely, whether Manning is precluded under the Workers' Compensation Act from suing Green for his work-related injuries and, if not, whether Utah Home Fire's insurance policy nevertheless excludes coverage of Manning's claims in his federal court action. We do not defer to the district court's rulings on these issues, but review them for correctness. *See Averett v. Grange*, 909 P.2d 246, 248 (Utah 1995). Specifically, we review the correctness of the district court's holding that there were no disputed issues of material fact and its application of the governing law. *See id.*

## DISCUSSION

¶ 9 Our threshold inquiry is whether Green functioned as an independent contractor or an employee of Holmes & Narver for purposes of the Workers' Compensation Act (the "Act"). The Act defines "independent contractor" as

> any person engaged in the performance of any work for another who, while so engaged, is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work; and is subordinate to the employer only in effecting a result in accordance with the employer's design.

Utah Code Ann. § 35–1–42(2)(b) (Supp. 1992).[4] The Act defines "employee" as

> each person in the service of any employer [which employer] employs one or more

workers or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, ... but not including any person whose employment is casual and not in the usual course of the trade, business, or occupation of his employer.

Utah Code Ann. § 35–1–43(1) (1988).[5]

¶ 10 In determining whether a worker acted as an employee as opposed to an independent contractor for purposes of the Workers' Compensation Act, our inquiry has long focused on whether the employer had the right to control the worker. *See, e.g., Averett*, 909 P.2d at 249–50; *Stricker v. Industrial Comm'n*, 55 Utah 603, 188 P. 849, 851 (1920). Regardless of how the parties intended to structure their relationship, a worker is considered to have been an employee if the employer had the right to control the worker's manner or method of executing or carrying out the work. *See, e.g., Bambrough v. Bethers*, 552 P.2d 1286, 1291–92 (Utah 1976); *Sommerville v. Industrial Comm'n*, 113 Utah 504, 196 P.2d 718, 720 (1948); *Parkinson v. Industrial Comm'n*, 110 Utah 309, 172 P.2d 136, 139 (1946); *see also Averett*, 909 P.2d at 250 (explaining that inquiry focuses not on intended relationship, but on relationship in fact created). We have consistently held that "it is the *right* to control which is determinative; the degree of control [actually asserted] is not essential." *Bambrough*, 552 P.2d at 1291 (emphasis in original); *see also Hinds v. Herm Hughes & Sons, Inc.*, 577 P.2d 561, 562 (Utah 1978).

¶ 11 In *Harry L. Young & Sons v. Ashton*, 538 P.2d 316 (Utah 1975), this court explained that, in general,

> an employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties. In contrast, an independent contractor is one who is engaged to do some particular project or piece of

---

4. This provision is now found at Utah Code Ann. § 34A–2–103(2)(a) (Supp.1998).

5. This provision is now found at Utah Code Ann. § 34A–2–104(1)(b) (Supp.1998).

work, usually for a set total sum, who may do the job in his [or her] own way, subject to only minimal restriction or controls and is responsible only for its satisfactory completion.

The main facts to be considered as bearing on the relationship here are: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment . . .; and (4) the furnishing of equipment.

*Id.* at 318; *see also Stricker,* 188 P. at 851 (explaining that independent contractors utilize their own methods of bringing about contracted result). In assessing a given relationship, not only do we consider whatever agreements exist concerning the right of control, but we also take into account the actual dealings between the parties and the control that was in fact asserted. *See, e.g., Averett,* 909 P.2d at 249–50 (considering parties' contractual arrangements and on-site activities to conclude defendant was an employee).

██ ¶ 12 In the case at hand, there are no disputed issues of material fact concerning Holmes & Narver's right to control Green's work: the parties' agreement specifies such right, and the actual control exercised is not in controversy. In view of the uncontested evidence, it is clear that Holmes & Narver retained and exercised the right to control Green's work conduct. For instance, the parties' agreement stated that "[Green] agrees to perform [the] work *as directed by [Holmes & Narver]* in accordance with the contract documents" and that "all rights, privileges, options and exercise of discretion with respect to said work reserved by or given to [Holmes & Narver] *may be maintained and exercised with or against [Green]*." (Emphasis added.) The agreement also provided that (1) "[Green] shall not employ any workmen whose employment and performance of the work is objected to by [Holmes & Narver] for any reason"; (2) "[Green] must submit a written daily report to [Holmes & Narver's] Quality Control Representative"; and (3) "[w]orking hours are Monday through Thursday, 6:30 a.m. to 5:00 p.m." Thus, under the express terms of their

agreement, Holmes & Narver retained the right to direct the performance or execution of Green's work, to exercise its full discretion with respect to Green's work, to control which workmen Green employed, to fire Green's employees for any reason, to monitor Green's work on a daily basis, and to dictate the days and hours Green worked.

¶ 13 Not only did Holmes & Narver retain the right to control Green's work, it systematically exercised that right. Representatives of Holmes & Narver inspected Green's work two or three times each day. If the representatives considered something to be wrong with the work, they required Green to make corrections. The required corrections did not relate simply to the contracted result of Green's work but also to the details and method of the work. Green's uncontroverted testimony is that the representatives of Holmes & Narver repeatedly gave him directions and instructions concerning the details of his work rather than simply the contemplated result. Holmes & Narver even mandated that Green install the siding from right to left rather than from left to right.

¶ 14 Holmes & Narver also required that Green obtain its approval with respect to each worker Green employed. In fact, on one occasion, Holmes & Narver prevented Green from hiring a particular individual. As stated in *Rustler Lodge v. Industrial Commission,* " 'An independent contractor can employ others to do the work and accomplish the contemplated result without the consent of the contractee, while an employee cannot. . . .' " 562 P.2d 227, 228 (Utah 1977) (quoting *Ludlow v. Industrial Comm'n,* 65 Utah 168, 235 P. 884, 888 (1925)).

¶ 15 Finally, in the daily reports that Holmes & Narver required, Green had to report extensive information concerning his work, including the hours each of his men worked on the job, the duties they performed, what, if anything, went wrong on the job, the results of Holmes & Narver's daily inspections, the corrections made in connection with those inspections, the equipment left on the job site, the equipment not left on the job site, the equipment and materials received on the job site, and whether Holmes

& Narver had inspected and approved such equipment and materials. From the information Green submitted, Holmes & Narver in turn issued various instructions and directions for Green to follow in performing the job. Hence, despite the fact that the parties' agreement specified payment of a lump sum for completing the job and that Green would furnish his own equipment, the evidence as a whole supports the district court's determination that, as a matter of law, Green acted as Holmes & Narver's employee.

¶ 16 Manning contends that irrespective of the traditional "right-to-control" test, Green does not qualify as an employee of Holmes & Narver under section 35–1–42(6)(a) of the Code, which provides:

> If any person who is an employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and *this work is a part or process in the trade or business of the employer*, the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors[ ] are considered employees of the original employer.

Utah Code Ann. § 35–1–42(6)(a) (Supp.1992) (emphasis added).[6] Manning maintains that under this provision, even if Holmes & Narver retained control or supervision over Green's work, that work was not a part or process of Holmes & Narver's trade or business;[7] thus, Green was not an employee but must instead be considered a subcontractor or an independent contractor subject to suit pursuant to section 35–1–62, which provides that an injured employee "may claim compensation [under the Act] and ... may also maintain an action for damages against sub-

contractors, general contractors, independent contractors ... not occupying an employer-employee relationship with [him] at the time of his injury or death." Utah Code Ann. § 35–1–62 (1988).

¶ 17 Manning's argument is premised on the faulty assumption that one who does not qualify as an employee under section 35–1–42(6)(a) must be considered by default a subcontractor or an independent contractor subject to suit under section 35–1–62. Section 35–1–42(6)(a) is limited in application to its specific purpose, which, as this court has explained, is " 'to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers.' " *Bennett v. Industrial Comm'n*, 726 P.2d 427, 431 (Utah 1986) (quoting 1C A. Larson, *Workmen's Compensation Law* § 49.14 (1986)). The provision safeguards against "unscrupulous principal contractors" who may attempt to avoid responsibility for insuring workers on their projects by " 'subdivid[ing] their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry ... compensation insurance.' " *Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 307–08 (Utah 1984) (quoting Larson, *Workmen's Compensation Law* § 49.11). Thus, section 35–1–42(6)(a) applies to the limited circumstance of assigning responsibility for workers' compensation coverage: those who qualify as "employees" under it are so considered only insofar as the principal contractor of the

---

6. This provision is now found at Utah Code Ann. § 34A–2–103 (1997).

7. In arguing that Green's work was not a part or process of Holmes & Narver's trade or business, Manning relies on the following provision in effect at the time of his injury:

> A portion of a construction project subcontracted to others may be considered a part or process in the trade or business of the general building contractor, only if the general building contractor, without regard to whether ... it would need additional employees, would

perform the work in the normal course of its trade or business.

Utah Code Ann. § 35–1–42(6)(c) (Supp.1992). Manning contends that Holmes & Narver did not install siding in the normal course of its business, but subcontracted such work to others as a matter of course. Manning's argument, however, is misguided. As explained herein, the right-to-control test determines whether a worker is an employee protected by the exclusive remedy provision.

project is ultimately responsible for procuring workers' compensation coverage for them. *See, e.g., Bennett*, 726 P.2d at 431–33 (explaining that this provision makes principal contractor liable for securing workers' compensation coverage for person hired by subcontractor). For all other purposes of the Workers' Compensation Act, the right-to-control test determines whether a worker is considered an employee.[8]

¶ 18 We conclude, therefore, that the district court did not err in ruling as a matter of law that Green was an employee of Holmes & Narver for purposes of the Workers' Compensation Act. This conclusion accords with this court's long-standing policy that the Workers' Compensation Act should be liberally construed to effectuate its purposes. *See, e.g., Smith v. Alfred Brown Co.,* 27 Utah 2d 155, 493 P.2d 994, 995 (1972). In line with that policy, we have stated that it is "proper to resolve doubt as to whether a worker was an employee in favor of [the worker being an] employee." *Bennett,* 726 P.2d at 430. It would indeed be inconsistent to resolve doubts in favor of a worker being considered an employee when the worker is seeking coverage but not in other situations, such as here, where the worker is being sued by another employee.

¶ 19 As an employee under the Workers' Compensation Act, Green is entitled to the protections the Act affords, including the protection against suit for injuries sustained by other employees of Holmes & Narver. The exclusive remedy provision states that an injured employee may not maintain an action at law for his or her injuries "against any officer, agent or employee of the employ-

er." Utah Code Ann. § 35–1–60 (1988). Although Manning was a temporary employee, he is considered an employee of Holmes & Narver. *See Ghersi v. Salazar,* 883 P.2d 1352, 1357 (Utah 1994). Consequently, the exclusive remedy provision precludes Manning from suing any other employee of Holmes & Narver for his injuries, including Green. Thus, there was no potential liability in Manning's federal court action triggering coverage under Utah Home Fire's insurance policy.

¶ 20 The dissent argues that since Manning's accident occurred after Green's employment with Holmes & Narver terminated, Manning can sue Green for his injuries. The dissent raises this argument, and would use it to reverse the district court's rulings, despite the fact that it was not addressed before the district court nor by the parties on appeal. That aside, the dissent is not in accord with the exclusive remedy provision (section 35–1–60), section 35–1–62, Professor Larson's treatise on the subject, the holding of *Riddle v. Mays,* 780 P.2d 1252 (Utah 1989), or the underlying purposes of the workers' compensation laws of the state of Utah.

¶ 21 The Workers' Compensation Act is intended not only to compensate employees for job-related injuries, but also to protect them against liability for job-related conduct. The exclusive remedy provision of the Act makes this latter purpose clear:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee ... shall be the exclusive remedy against any officer,

---

8. The statutory standard of section 35–1–42(6)(a) is not the equivalent of the right-to-control test. Section 35–1–42(6)(a) expressly allows for employees of a subcontractor to be deemed employees of the person who hired the general contractor despite the fact that that person may not have retained or exercised any control over the subcontractor or its employees. Moreover, this court has explained that the "statutory employee" standard of section 35–1–42 cannot be equated with the common law right-to-control standard for distinguishing between employees and independent contractors. *See Bennett,* 726 P.2d at 431–32. An individual may be an "independent contractor" under the common law standard while at the same time qualifying as an

employee for purposes of section 35–1–42(6)(a). *See Pinter Constr. Co.,* 678 P.2d at 308. The "statutory employer provision is a legislatively created scheme by which conceded nonemployees are deliberately brought within the coverage of the [Act]." *English v. Kienke,* 848 P.2d 153, 158 (Utah 1993). To the extent the two standards can be compared, the level of control or supervision contemplated under section 35–1–42(6)(a) is less than the requisite degree of control to which one must be subject to qualify as an employee under the right-to-control test. *See Bennett,* 726 P.2d at 432 (noting that "the term 'supervision or control' [under the statutory standard] requires only that the general contractor retain ultimate control over the project").

agent or employee of the employer ... and no action at law may be maintained against an employer or against *any* officer, agent or employee of the employer based upon any accident, injury or death of an employee.

Utah Code Ann. § 35–1–60 (1988) (emphasis added). The protection against suit provided by this section extends to *any* employee; there is no distinction between current and former employees of the same employer on the same project. Under the dissent, however, if an employee is negligent but his employment happens to end before that negligence injures another employee, the injured employee would be free to sue the negligent employee for tort damages. There is no rational justification for allowing an injured employee in such a circumstance to collect benefits under the Act and pursue common law damages while limiting the remedy of other injured employees to workers' compensation. Moreover, the dissent's proposed restriction on the scope of the exclusive remedy provision is not contained in the provision's plain language.

¶ 22 Under the dissent's interpretation, to protect themselves against liability, employees would need to purchase liability insurance for their work on prior jobs despite the fact that they were covered by workers' compensation insurance when they performed that work. In addition, whenever workplace injuries occur, investigations would be required to determine whether the injuries were caused by former employees who could be sued and from whom the employer or its workers' compensation carrier could seek indemnification. The legislature could not have intended such results.

¶ 23 The dissent relies on section 35–1–62 for support. That provision, however, speaks nothing about immunity against suit between co-employees. Rather, it states that an injured employee may sue certain "third-party" entities, including *"subcontractors, general contractors, independent contractors, [and] property owners* ... not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death." Utah Code Ann. § 35–1–62 (1988) (emphasis added). Green acted in

none of these enumerated capacities; as already discussed, he functioned as an employee of Holmes & Narver.

¶ 24 The dissent also mistakenly relies on section 65.13 of Professor Larson's treatise on workers' compensation law. That section states that in determining whether an employee is barred from suing his or her *employer,* "[t]he controlling fact ... is the relationship of the parties at the time of occurrence of the injury." 6 Arthur Larson & Lex A. Larson, *Larson's Workers' Compensation Law* § 65.13, at 12–17 (1998). This section of the treatise and the cases cited therein have nothing to do with immunity from suit between co-employees; nevertheless, the dissent adds bracketed language to its quotation of this section indicating otherwise. *See infra* ¶ 37. The error in this is that co-employee immunity is addressed in a completely different part of the treatise in a manner that contradicts the dissent's position. *See Larson* §§ 72.00 to 72.34. In reference to a typically worded exclusive remedy provision, equal in scope to section 35–1–60 of the Utah Act, the treatise provides, "It is now well established that the effect of this general type of clause is to bar *all* suits against coemployees by injured employees." *Id.* § 72.21, at 14–146 (emphasis added). The treatise further states that "immunity attaches to the coemployee only when the coemployee is acting in the course of his employment." *Id.* § 72.23, at 14–154. Thus, if the co-employee's injury-causing conduct occurred in the course of employment, the co-employee is protected against suit. The cases cited in section 72.23 of the treatise uphold this principle. No distinction is made with regard to whether the co-employee is still employed at the time of injury.

¶ 25 In any event, our determination is governed by the statutes at issue, which also indicate that as long as an employee's injury-causing conduct occurred in the course and scope of employment, he or she is immune from suit by other employees. For instance, in defining "third persons" subject to suit, section 35–1–62 states, "When any injury or death ... shall have been caused by the wrongful act or neglect of a person other than an employer, officer,

agent, or employee of said employer, the injured employee ... may [sue] such third person." Utah Code Ann. § 35–1–62 (1988). This language focuses the inquiry on whether the person who caused the injury was an officer, agent, or employee at the time of his or her wrongful act or neglect. The clear implication is that if a person engages in wrongful or neglectful conduct while as an employee, then that person is *not* a "third person" whom the injured employee may sue, regardless of when the injury occurs. *Cf. Fields v. Jantec, Inc.*, 317 Or. 432, 857 P.2d 95, 99–100 (1993) (holding that employee may not sue former employer based on alleged negligence that occurred during employment relationship even though employee's injury did not occur until after new employer took over business). Here, Green's alleged negligence occurred while he was an employee of Holmes & Narver. Accordingly, Manning cannot sue Green for his injuries.[9]

¶ 26 Because coverage is not triggered under Utah Home Fire's liability insurance policy, we need not consider the applicability of the policy's exclusions. The district court correctly entered summary judgment in favor of Utah Home Fire.

¶ 27 Affirmed.

¶ 28 Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

STEWART, Justice, dissenting:

¶ 29 I dissent. ·

¶ 30 The majority opinion flouts the plain and controlling language of §§ 35–1–60[1] and 35–1–62[2] of the Workers' Compensation Act and misstates, and in effect overrules sub silentio, the holding of *Riddle v. Mays*, 780 P.2d 1252 (Utah 1989). The majority's view that it is improper for the dissent to address the issue at hand is incorrect. The issue has been raised, and it is our duty to address it, as I explain at the end of this opinion.

¶ 31 The issue is whether Patrick J. Manning, an injured employee of Holmes & Narver, Inc. (H & N), has a common right of action against William R. Green, dba Green Services. Green Services' public liability insurance carrier challenges Manning's right to sue Green.

¶ 32 Green contracted to install siding on a building for H & N but was discharged by H & N prior to H & N's hiring of Manning. Green held itself out as an independent contractor but, while working for H & N, was an employee and statutory employee because H & N had far-reaching control of Green's conduct on the job, as the majority states.[3] Manning was never an employee of H & N at the same time that Green was an employee (statutory or otherwise, it makes no difference) of H & N.

¶ 33 Manning was severely injured while in the course and scope of his employment

---

9. This case is clearly distinguishable from *Riddle v. Mays*, 780 P.2d 1252 (Utah 1989) (per curiam). *Riddle* held that pursuant to section 35–1–62, a direct employee of Owens–Corning was not precluded from bringing an action against an employee of a subcontractor of Owens–Corning. *See id.* at 1253. The situation here is significantly different: both Manning and Green were direct employees of Holmes & Narver. In relying on *Riddle,* the dissent draws no distinction between workers who are employees under the right-to-control test and workers who are "statutory employees." As explained fully herein, the two are not the same.

1. This provision has been renumbered and is now found at Utah Code Ann. § 34A–2–105 (1997).

2. This provision has been renumbered and is now found at Utah Code Ann. § 34A–2–106(1) to –106(4) (1997).

3. The majority opinion rules that Green was an employee of H & N. In actuality, Green was a "statutory employee" of H & N. *See* Utah Code Ann. § 35–1–42; *Lee v. Chevron Oil Co.*, 565 P.2d 1128 (Utah 1977). Whether "employee" or "statutory employee," however, Manning is not barred from suing Green under the exclusive remedy provision of section 35–1–60. While H & N controlled much of Green's on-job conduct, the contract with Green provided for a lump sum payment to Green and for Green to provide the necessary equipment to perform the job. To say that Green was an employee and a statutory employee with respect to H & N is fully consistent with Green's also being an independent contractor for other purposes. *See, e.g., Bennett v. Industrial Comm'n,* 726 P.2d 427 (Utah 1986); *Lee v. Chevron Oil,* 565 P.2d 1128 (Utah 1977).

with H & N. He received workers' compensation from H & N and then sued Green for negligence that occurred prior to Manning's employment with H & N, and that allegedly caused his injuries. At the time of Manning's accident, Green had no employment relationship with H & N, either as an employee or as a statutory employee.

¶ 34 The majority opinion holds that because Green Services had been an employee of H & N prior to the time H & N hired Manning, Manning and Green were co-employees, although they had never been employees of H & N at the same time, and therefore Manning was barred under section 35–1–60 of the Act from suing Green.

¶ 35 Under the Act, an injured employee is entitled to workers' compensation if he is injured by an accident that *occurs in the scope and course of his employment.* *See* Utah Code Ann. § 35–1–45 (1988).[4] If that test is met, it makes no difference whether the injury was caused by the employer, a co-employee of the injured employee, or a third person. Thus, "course and scope of employment" defines the applicability of the Act as to both the right to compensation and the scope of the exclusive remedy provision. Section 35–1–60 establishes the fundamental principle that the *"right to recover compensation ... for injuries sustained by an employee"* in the course and scope of his employment by the employer is the exclusive remedy "against the employer and shall be the exclusive remedy against any officer, agent, or employee of the employer." (Emphasis added.)

¶ 36 To reach the result the majority does, it is necessary to add words to the statutory language in section 35–1–60 that the Legislature did not employ. In effect the majority adds the word "former" to the terms "employer," "officer," "agent," and "employee," expanding the exclusive remedy provision far, far beyond what the Legislature provided and even past rationality. To say that an employee injured in the course and scope of his employment is a *co-employee* of one who previously worked for the same

employer is nonsense, especially when the injured employee did not work for the employer at any time when the prior employee worked for the employer and therefore was never a co-employee. To say that an injured employee cannot sue at common law former employers and former officers, agents, and employees constitutes a huge distortion of the Act.

¶ 37 A corollary principle of the right to compensation for an industrial accident is that all persons *sharing the employment relationship at the time of the injury* are immune from a common law action for damages. Thus, for the purpose of determining the *employee's right to compensation,* and also for the purpose of determining an *employee's right to sue a third person for damages,* the existence of the employment relationship at the time the accident occurs determines both the employee's right to compensation *and* the immunity of the employer and its officers, agents, and employees from a common law action for the same accident. Professor Larson states:

> The controlling fact in establishing exclusiveness [of the workers' compensation remedy] is the relationship of the parties at the time of occurrence of the injury. *Their relationship at other times, such as the time of the employer's [or co-employee's] misconduct or the time of bringing the suit is immaterial.*

6 Arthur Larson & Lex A. Larson, *Larson's Workers' Compensation Law* § 65–13, at 12–17 (1998) (emphasis added). That is precisely what the following courts have held: *See Hull v. Aurora Corp. of Ill.,* 89 A.D.2d 681, 454 N.Y.S.2d 39 (N.Y.App.Div.1982); *Konken v. Oakland Farmers' Elevator Co.,* 425 N.W.2d 302, 304–06 (Minn.Ct.App.1988); *Du-Von v. Rockwell Int'l,* 116 Wash.2d 749, 807 P.2d 876, 878–79 (1991) (en banc).

¶ 38 The majority opinion asserts that I have misstated the content of Professor Larson's Treatise and have erroneously referred to section 65.13 as support for the proposition that the critical time for determining

---

4. This provision has been renumbered and is now found at Utah Code Ann. § 34A–2–401 (1997).

whether an injured employee can sue another for damages is the *time of the accident.*

¶ 39  The majority's assertion that I have misstated section 65.13 is simply wrong. To repeat the critical language of section 65.13 at 12–17: *"The controlling fact in establishing exclusiveness [of the workers' compensation remedy] is the relationship of the parties at the time of the occurrence of the injury."* [5]  (Emphasis added.)  Their relationship at other times "is immaterial." *Id.* The majority states that this applies only with respect to determining who an employer is.  The above language simply does not say that.  The caption to section 63.13 states broadly: "Time of injury controls [the exclusivity] defense."  Furthermore, as a logical matter, if the time of injury controls the determination of who is an employer, how can the time of injury not control the determination of who is an employee?  The same standard must control both questions, and, as shown below, that is exactly what the Utah Act provides.

¶ 40  The majority opinion, after asserting erroneously that section 65.13 at 12–17 of Professor Larson's treatise refers only to the determination of who an *employer* is, then states that "[t]he error in this is that co-employee immunity is addressed in a completely different part of the treatise in a manner that contradicts the dissent's position. *See id.* §§ 72.00 to 72.34." *Supra* ¶ 24. It is patently false to say, as the majority does, that those sections contradict the dissent.  Sections 72 to 72.34 do not address at all the question of whether an injured employee may sue a prior employee of the employer.  That issue, as to when the necessary employment relationship exists, is addressed, as stated above, in section 65.13.

¶ 41  Section 35–1–62 of the Utah Act makes explicit that the time of the accident controls who is deemed to be an employer

and who is deemed to be an employee.  The section states:

> When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee ... may claim compensation and ... *may also have an action for damages against such third person.....*

> For the purposes of this section and notwithstanding the provisions of Section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, *not occupying an employer-employee relationship with the injured or deceased employee at the time of his injury or death.*  When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee, or in case of death of his dependents may claim compensation and the injured employee or his heirs or personal representative may also have an action for damages *against third persons.*

Utah Code Ann. § 35–1–62 (1988) (emphasis added).

¶ 42  Under section 35–1–62, Manning "may claim compensation and ... *may also have an action for damages* against [a] *third* person" and may also "maintain an action ... against subcontractors, general contractors, independent contractors ... not *occupying an employer-employee relationship with the injured* or deceased employee *at the time of his injury or death."*  In short, H & N did not have an "employer-employee relationship" with Green at the time of Manning's

---

5.  The next sentence in section 65.13 at 12–17 states that the time "of the employer's misconduct" is *an example* of factors that are irrelevant in establishing the exclusiveness of the compensation remedy.  It is absurd to suggest, as the majority implicitly does, that the time for determining who is an employee under the Act is different from the time for determining who an employer is.  Indeed, the terms "employer" and "employee" are reciprocal.  One cannot exist without the other.  Furthermore, the use of a "for instance" by Professor Larson does not limit the applicability of the general principle stated in section 65.13.  It is plainly disingenuous to suggest otherwise.

injury. Green was a former employee at that time. At the time of the injury, Green was both a third person and an independent contractor. It follows that Manning has a statutory right to sue Green for damages.

¶ 43 Much of the majority opinion goes to great length to prove that Green was an employee of H & N. That point is uncontested; but, although not critical in the above analysis based on section 35–1–62, it is also true that Green was also a statutory employee of H & N.

¶ 44 *Riddle v. Mays,* 780 P.2d 1252 (Utah 1989), also compels the conclusion that Manning may sue Green under section 35–1–62. Riddle was an employee of Owens–Corning Fiberglass Corp. The defendant Mays was employed by Mountain States Insulation Corp., a subcontractor of Owens–Corning. Riddle was injured by Mays. The trial court dismissed Riddle's action for damages against Mays and Mountain States on the ground that Riddle's exclusive remedy was workers' compensation under section 35–1–60. Riddle appealed on the ground that only his direct and actual employer, Owens–Corning, and its agents and employees were immune from suit under section 35–1–60. On appeal, this Court accepted the trial court's finding that Owens–Corning was the statutory employer of Mays and held that under *Pate v. Marathon Steel Co.,* 777 P.2d 428 (Utah 1989), Riddle could recover damages under section 35–1–62 against a *statutory* employee who was also an independent contractor for other purposes. That is precisely the situation here—Green was a statutory employee, and perforce an independent contractor.

¶ 45 The majority dismisses *Riddle* by asserting that Mountain States Insulation Corp. was a subcontractor of Owens–Corning; but that did not obviate the fact that Mountain States was also a statutory employee of Owens–Corning. Accordingly, Mays could sue Mountain States under section 35–1–62 even though Mays and Mountain States were both employees of Owens–Corning. The majority maintains that Green was an employee, but not a statutory employee, because the test for determining an employee—the right to control—is more

stringent than the test for determining a statutory employer. The point is incorrect. An independent contractor can clearly meet the right to control test and still be a statutory employee, as occurred with respect to Green. *See Lee v. Chevron Oil Corp.,* 565 P.2d 1128 (Utah 1977).

¶ 46 Finally, it is not improper for the Court to address the issues discussed in the dissent. Patrick Manning, in his brief, asserts that he has a claim "against Green Services" which is actionable "pursuant to section 35–1–62(4), Utah Code Annotated." Indeed, Manning relies specifically on the statutory language set out above that is found in section 35–1–62. Thus, raising these issues is entirely appropriate. Even if Manning had not raised the issue, addressing it would still be proper. An appellate court, in discharging its sworn duty to decide a case on the merits of the substantive law, is obligated to address those issues " 'necessary to a proper decision.' " *Kaiserman Assocs., Inc. v. Francis Town,* 977 P.2d 462, 464 (Utah 1998) (quoting *Falk v. Keene Corp.,* 113 Wash.2d 645, 659, 782 P.2d 974, 982 (1989)). Courts ought never to decide a case on the basis of which attorney scores the most points in the contest between the parties. The obligation of this Court runs to the parties, not the attorneys. If the attorneys have failed to argue an issue precisely as it might best be framed, it is for an appellate court, nevertheless, to decide the issue correctly: "We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments." *Id.* at 464.